FOX AND WHEATLEY v. FOX.

(*Nashville.* March 11, 1899.)

1. WILLS. *Bequest absolute when.*

After testator had made many bequests, all absolute except one given with strict limitations to a trustee for the benefit of an improvident son and his family, he, in a distinct and separate clause of the will, provided that any surplus that might remain of his estate, after payment of all said bequests, should "be divided between those named in my [his] will in the same proportion that my [his] estate bears to their respective bequests." There was a surplus of the estate for distribution. *Held:* The improvident son takes absolutely, and without any limitation whatever, a share of this surplus proportionate to the bequests made to the trustee for the benefit of himself and family in preceding clauses. (*Post, pp. 79–85.*)

2. SAME. . *The intention that controls in construction.*

The intention of a testator that controls in the construction of his will is that intention which is expressed in the will or is fairly inferable from its terms. The Court will not give effect to an intention, though morally certain that it existed in the testator's mind, unless it has found expression in his will. (*Post, pp. 84–86.*)

Cases cited and approved: 34 Am. St. Rep., 64; 7 Metc., 188.

3. SAME. *Bequests separate and independent, when.*

Several independent bequests, not grammatically connected or united by the expression of a common purpose, must be construed separately and without relation to each other, although it may be conjectured, from similarity of relationship or other such circumstances, that the testator had the same intention in regard to both. There must be an apparent design to connect them. (*Post, pp. 86–90.*)

Cases cited and approved: 25 Ch. Div., 538; 64 Md., 306.

Cases cited and distinguished: Vancil v. Evans, 4 Cold., 340; Ewin v. Park, 3 Head, 712; Brown v. Cannon, 3 Head, 355.

Fox and Wheatley *v.* Fox.

4. SAME. *Presumption against restrictions on legacy.*

It is a safe canon of construction that if the language of a will leave it doubtful whether or not the testator intended to incumber a legacy with a trust, or in any way restrict or limit it, the benefit of the doubt should be given to the legatee. (*Post, pp. 91, 92.*)

5. SAME. *Presumption in favor of heir.*

It is an established rule of construction of wills that the law favors the heir, and that, therefore, the property disposed of shall, as near as may be consistent with the terms of the will, follow the laws of descent and distribution. (*Post, p. 92.*)

---

## FROM MARSHALL.

---

Appeal from Chancery Court of Marshall County. W. S. BEARDEN, Ch.

MARSHALL & ARMSTRONG and J. J. VERTREES for Fox and Wheatley, Executors.

J. A. PITTS, M. H. MEEKS, and H. C. LASSING for J. L. Fox.

WILKES, J. The original bill in this case was filed by the executors of P. Fox, Sr., to construe his will. To it his son, J. L. Fox, and his wife and minor children were made defendants.

The first item of the will provides for the payment of debts, funeral expenses, and a suitable monument; the second gives the widow a certain tract of land for life and $1,500 in money absolutely; the third provides for the children of his deceased son, Wm.

Fox; the fourth gives to his son, Pervines Fox, Jr., $1,200.

The fifth clause, which is one to be especially considered, is as follows:

"I further will that Pervines Fox, Jr., as trustee for J. L. Fox, have, for the use of said J. L. Fox, the farm on which he now lives, known as the Wiley Davis place, and that he also have the sum of $5,000 free from any indebtedness and from any advancements by me to him. Said J. L. Fox is to have the use and occupancy of the land for the benefit of himself and family, and the interest of the $5,000 the same way, but in no event are either to be subject to his debts or contracts, neither the principal or interest or the proceeds of said land. After the death of J. L. Fox, his widow, if living, shall have the use and occupancy of the land for herself and the children of J. L. Fox while she is single; but if she marries, then the trustee is to let his children have the benefit of the same, and at his death the children of said Fox will take the land and money absolute, subjecting the land, as above stated, to his widow, other money to be paid to them when they arrive at age. But in the event that. J. L. Fox shall live, for five successive years after my death, a sober, industrious life, and tries to save, then he himself is to have said money, to do with it as he may wish, and his trustee will pay the same to him when this may happen. The County Court will take a bond from his said trus-

tee, in the sum of $10,000, for the faithful per-
formance of his duty, and shall remove him when-
ever it is shown that he is in any way not doing
his duty.''

The sixth clause gives to J. G. Fox $10,000;
the seventh gives to W. H. Wheatly the remainder
of the land given to the widow for life; and to
said Wheatly and other children of Mary Wheatly,
deceased, pecuniary legacies as follows: Samuel P.
Wheatly, $1,500; John W. Wheatly, $1,500; Frank
Wheatley, $1,500; W. H. Wheatly, $10,000, and
to '' W. H. Wheatly, in trust for his sister, Mrs.
Mattie Taylor, the sum of $1,500, to be invested
in a home of her own selection, for self, and, at
her death, to dispose of as she may wish, but in
no way to be liable for her husband's debts or con-
tracts.''

The eighth clause is as follows: '' I further will
and desire that my executors, so soon as practicable
after my death, convert all my real and personal
estate into cash, and I here give them full power
to transfer any real estate I may own at my death
not herein conveyed by deed and make title thereto
without the aid of the Court wherever it is practi-
cable to do so, and that they pay the bequests
herein made, but if it shall be that I have not a
sufficiency to pay all the bequests in full, then that
they be paid in pro rata to the amount of each
bequest, and if there should be more than is neces-
sary to pay all these bequests, then the remainder

Fox and Wheatley *v.* Fox.

will be divided between those named in my will in the same proportion that my estate bears to their respective bequests, except the amount given to my wife, which is not to be increased or diminished by the amount of my estate.''

The ninth clause provides for forfeiture by any legatee who may attempt to break the will, and the tenth and last clause simply nominates executors and prescribes the bond to be given by them.

There turned out to be a large surplus after payment of the amounts named in the will, and the question is whether the part of this surplus apportionable to the share of J. L. Fox, or to Pervines Fox, Jr., as trustee for J. L. Fox, goes to J. L. Fox directly and absolutely or to Pervines Fox, Jr., as trustee for J. L. Fox under the trusts and limitations of the fifth clause.

The will is dated April 16, 1886, and the testator died August 16, 1887. The executors soon thereafter qualified, and, after proceeding with the execution of the will and paying the specific legacies, ascertained that there would be a large surplus for division under the eighth item of the will. They thereupon filed a bill asking a construction of the will and instructions as to whether the share going to J. L. Fox out of this surplus should be paid to him absolutely or to his trustee under the limitations of the fifth item of the will; and asking the Court to fix a proper basis for the distribution and division of the surplus.

J. L. Fox answered the bill and insisted that the share coming to him out of the surplus should be paid to him absolutely and free from the restrictions and limitations of the fifth clause, while his children, by guardian *ad litem*, insisted on the contrary construction, and that such interest should be affected by the trusts and limitations of the fifth item.

The Chancellor held with the contention of J. L. Fox that his share in the surplus should be paid to him and held by him free of any limitations or restrictions. This decree was rendered June 18, 1892. Whether the executors have paid out the fund or not does not appear. On November 26, 1898, the minor children of J. L. Fox, by next friend, obtained a writ of error to this Court and seek to review this decree and set it aside for error on its face.

It is insisted that the decree improperly fixes the basis for distribution, but it seems that this feature has been settled satisfactorily to all parties and the basis of distribution is not before us at this time. The question presented to us is, did J. L. Fox take the share of the surplus apportioned to him absolutely or under the trust restrictions and limitations of the fifth clause? The Court of Chancery Appeals held the latter view, reversing the decree of the Chancellor, and the cause is before us on appeal of complainant.

It appears that J. L. Fox's share of the surplus

will amount to about $5,000. The will is inartificially drawn, and it is evident the testator did not fully appreciate the extent of his estate. He evidently supposed that he had given away the whole or greater part of his estate by the specific legacies and bequests he had made, and he was uncertain whether there would be a surplus or a deficit. He therefore provided for an abatement of the specific legacies in the event the estate was not sufficient to support them, and, on the other hand, provided for the distribution of the surplus in the event there should be a surplus.

It is evident from the whole will that he considered this a matter of but little importance and that the surplus or deficit, as the case might be, would be small. If he had known that the surplus would be so large as it has proven to be he would have shown himself more solicitous as to the provisions relating to it and would not, perhaps, have provided for a deficit. The first idea that impresses itself is that, believing this surplus, if any, would be small, he was not solicitous to tie it up with restrictions and limitations and evidently thought that by the fifth item he had provided a fund sufficient to protect his son's family from his extravagance, and did not intend to tie up the small surplus that might arise under the eighth item or any fund which might arise under the ninth item.

The testator evidently intended to put the land set apart for J. L. Fox in trust, and to keep it

in trust continuously, but as to the $5,000 he was not so strict, and it has to go to his son absolutely if he kept sober and tried to save for five years. How this was found to be we have no means of knowing.

It was not the purpose of the father to tie up any part of the property given his son continuously and for all time except the land, and we are of opinion that, by not specifically directing that his share in the residue should be impressed with the trusts and limitations of the fifth clause, he did not intend that it should be affected thereby.

It is probable that if the testator had known that J. L. Fox's share in the surplus would be as much as $5,000—that is, equal to the specific legacy he had given him, he might have been disposed to hedge it around with restrictions and limitations at least for the same length of time provided for the $5,000 legacy.

The question is not, however, what he would have done with that state of facts before him, but what did he do with evidently a different state of facts in his mind? Likewise, if he had anticipated that many of his legatees and devisees would contest his will, he might have tied up the amounts J. L. Fox would receive on account of that state of things, but he did not look on this as a probable result, and hence made no provision to limit any amount derived under these conditions.

We are of opinion that, under the residuary clause,

the amount going to J. L. Fox would go absolutely, just as his share in any forfeited legacy or devise would do under the ninth item. Both provisions are contained in the eighth and ninth clauses of the will, and there is no limitation expressed in either. No limitation or restriction can be imposed except it is done by express words or such connection between the two provisions as reads one into the other. It is true the intention of the testator is to prevail, as in all cases of the construction of wills. But this intention can only be learned from the words used in the will. Indeed, it may appear morally certain that the testator may have, in his mind, intended a certain thing, but unless he has expressed that intention, either by writing it into his will in express terms or by necessary implication and construction, it cannot prevail.

The question is not what the testator intended in his mind, but what is the meaning of his words and his intention as shown by them. 2 Woerner's Am. Law, Sec. 414; Pritchard on Wills, Sec. 384; Beech on Wills, Sec. 311: *Pringel* v. *Voltz*, 34 Am. St. Rep., 64. An illustration of this idea is found in the case of *Tucker* v. *Seaman's Society*, 7 Metc., 188. This will gave a legacy to the "Seaman's Aid Society." The Seaman's Friends Society claimed the legacy, and offered evidence to show that the testator did not know there was such a society as the one named in the will, but did know of the other, and was deeply interested in its objects, and

had been accustomed to contribute to it, and had frequently expressed a determination to give it a legacy. But all this was held inadmissible because there was a society like that named in the will and the only one of that name. Thus it was that the real intention of the testator could not prevail because he had not written it in his will, but his property went in a direction he did not design, because the intention expressed in the will so indicated.

It is said that the intention to dispose of the whole estate by the first seven clauses of the will appears by their provisions, but we think directly the reverse; that the testator anticipated there might be a surplus, and this was to be disposed of by the eighth clause. No doubt the amount passing under this item is greater than he expected, and if he had known of the amount he might have provided differently, but the fact recurs that he did not do so.

It is insisted that the amount passing under the eighth item must be considered as a legacy added to the one given in the fifth item—that is, in the nature of an accretion to it, and therefore subject to the same restrictions and conditions under the rule laid down in the text-books and cases. Beach on Wills, Sec. 313.

But the question arises, is this an added legacy or an independent one? A case in point is that of *Reid* v. *Walback*, 75 Md., 205; 8 Am. Pro. Rep., 131. Mrs. Whelon made a will containing thirty

clauses and four codicils. The will and three of the codicils gave property to trustees for Mrs. Walback, a daughter of the testatrix, but gave it to trustees for her life, and at her death to her children then living. Clause twenty-eight was the residuary clause. It gave all the residue to three daughters, Mrs. Walback being one of them. It said, "To my daughter Jane Margaret (Walback) one-fourth part thereof." One question was whether the residuary fund went to Mrs. Walback absolutely or to be under the limitations of the trust created by the previous clauses. The Court held that it passed to her absolutely, unfettered by the trust.

The rule as laid down by Mr. Jarman in his work on Wills, Vol. 3, p. 708, is applicable. That rule is this: "Several independent devises, not grammatically connected or united by the expression of a common purpose, must be construed separately and without relation to each other, although it may be conjectured from similarity of relationship or other such circumstances that the testator had the same intention in regard to both. There must be an apparent design to connect them." Jarman on Wills (6th Ed.), 1657; *In re Johnston*, L. R., 25 Ch. Div., 538, 545; 2 Woerner Am. Law, Ad., Sec. 416.

The cases of *Buchanan* v. *Loyd*, 64 Md., 306; 5 Am. Prob. Repts., 30, and *Doe. Dem.*, etc., v. *Westley*, 4 Barnwell & Cresswell, 667, are also in point.

We are cited to the case of *Vancill* v. *Evans*,

4 Cold., 340, as sustaining the contention of the minors. The syllabus of that case is as follows: "The rule of construction, that the last clause of a will must prevail over the first clause, applies in cases only where the two clauses are incompatible and contradictory, and cannot, for that reason, stand together. But where a former legacy is given with a limitation to other parties, a second legacy given in general terms will go to the same parties and be limited over in the same way; or, when one legacy is given in addition to the former legacy, it will be construed as subject to the same conditions as the former." The Court cites for this proposition *Crowder* v. *Clowes*, 2 Ves. Jr., 449, and Redf. on Wills, 360, and authorities cited.

Mr. Redfield, at the page just cited, lays down the rule as follows, citing numerous authorities: "It seems to be well settled that where legacies are given expressly upon the same terms as former ones, or where one legacy is given in substitution for another, or where it is given in addition to a former legacy, it will be so construed as to be raised out of the same fund, and subject to the same conditions as the former one."

Mr. Williams, in second volume of his work on Executors, bottom page 1084, after stating the general rule that where there is no connection by grammatical construction or direct words of reference, or by the declaration of some common purpose, between distinct bequests in a will, aid cannot be drawn in

the construction of special terms in the one from those of another, adds: "The tendency, however, of modern decisions (and good sense appears to require it) is to read the different clauses in the will referentially to each other, unless they are clearly independent."

These text-books, as we think, lay down the correct rule, but it was misstated in the case of *Vancil* v. *Evans*, 4 Cold., 340. The Court of Chancery Appeals followed, and evidently were controlled by, this case. The crucial inquiries are, whether the legacies are given expressly on the same terms as former ones, or in substitution for the former, or in addition, and as an accretion to a former legacy. In all these cases the added or substituted legacy will be subject to the same conditions as the former one, but this is not the rule where the legacies are independent and not substituted or added.

The case of *Crowder* v. *Clowes*, 2 Ves. J., 449, was a case of additional legacy of two hundred pounds, clearly connected by express reference with the former legacy and an accretion to it, and it is only in similar cases that the added legacy takes the limitations of the former one. 1 Jar. on Wills, 183 (Bigelow, Ed. 1893).

The case of *Ewin* v. *Park*, 3 Head, 712, is cited by counsel in support of the contention of the minors, but it is distinguished from this in the fact that in that case one-half of whatever amount Catherine D. J. should receive under the will was to

pass under the trust, whether it was that portion directly going to her or that part contingent upon the death of Benjamin Russ, but no specific sum was set apart to pass under the trust and be subject to it as in this case. Hence, the Court, in that case, held the language to mean all and every amount which, under the terms of the will, passed directly or indirectly to Catherine, should be divided, and one-half pass under the trust. Such is the evident meaning of the language used in that case, but it is not in point in this case where the amount limited is fixed and specially named.

The case of *Brown* v. *Cannon*, 3 Head, 355, is also cited, but is distinguishable upon the ground that the second legacies were substitutes for the first, and it was so expressly stated, in the opinion of the Court, that such substitution would not change the character of the title nor the trusts attached to the property. Here there is no intention to substitute, and the case of *Brown* v. *Carman*, 3 Head, 355, is not in conflict with the rules laid down in this case. The contention for the minor is virtually that really nothing passed directly by the residuary clause, and that it did not of itself dispose of any residue, but that it simply served to increase the legacy given by the fifth item and under its limitations. It would have been easy to say so if this had been the intention, and it is difficult to see why it would not have been so expressed if the testator intended to limit this surplus. It cannot be the rule that all

Fox and Wheatley v. Fox.

residuary clauses are mere suffixes and additions to previous clauses to operate simply as an enlargement of specific legacies already given, when those given are restricted and impressed with a trust, and those contained in the residuary clause are not. In this will the residuary clause does not in any way refer to the legacies, but deals alone with the surplus remainder.

The only connection between the fifth and eighth items is not by an express reference, but the fifth item may be looked to simply to ascertain who are the parties to take under the eighth item, and the proportions in which they are to take. But there is no allusion in the eighth item to the limitations contained in the fifth, and it would have been perfectly easy, and the natural thing, to have said in the eighth item, disposing of the surplus, that it should be held on the same terms and limitations as the legacies already given, if such had been the intention. The two items are separated by the sixth and seventh items, and there is no expressed or apparent design to connect them; but the eighth only refers to prior portions of the will to ascertain who are the beneficiaries and in what proportion they take. Now, of course, the will must be construed as a whole, and not in detached fragments; but this does not mean that items must be connected together so as to bear upon and influence or control each other unless an intent to make them do so can be gathered from the will itself. We think it is a

safe canon of construction that if the language of a
will leaves it doubtful whether or not the testator
intended to incumber a legacy with a trust, or in
any way restrict or limit it, the benefit of the doubt
should be given to the legatee.

It is a rule well established that in the construc-
tion of wills the law favors the heir, and that the
property shall, as near as may be consistent with
the will, follow the laws of descent and distribu-
tion, and there should be an intent manifest in the
will to effect a change.

Some stress is laid upon the language in the
eighth item that the surplus there referred to should
be divided among those named in the will, and it
is argued, and the Court of Chancery Appeals held,
that this means to the trustee of J. L. Fox, inas-
much as he is the party named to take under the
fifth item of the will, and there is no gift to J.
L. Fox separately either absolutely or otherwise.
But it is evident that this testator did not use
terms and words with strict legal precision, and it
is also evident that he meant that the parties bene-
ficially interested in his estate and named as bene-
ficiaries should take. It is evident that the testator
when he refers to those " named in his will," in
the eighth item, had in mind the same persons
named as his heirs to take forfeited shares under
the ninth item of the will.

While we are satisfied that the testator did not
impress this surplus with the trusts and limitations

contained in the fifth item of the will, but it was
to go absolutely to the parties beneficially interested
in the will, a question of some apparent difficulty
arises as to who shall take the surplus absolutely
under the provisions of the eighth item. We have
already held that it was intended to be given the par-
ties who were beneficiaries under the will. It is
evident that the testator intended the wife and chil-
dren of J. L. Fox to take a beneficial interest un-
der the fifth clause as well as J. L. Fox himself,
and it was the object and purpose of the testator
that all should receive benefits from it. This being
so, the question is not whether J. L. Fox's trustee
is to take the surplus, for, not being beneficially
interested, he can, in our view, take nothing; but
whether J. L. Fox takes this surplus separately or
in common with his wife and children. They are
all named in the fifth item and each takes a bene-
ficial interest, but the beneficial interest which the
wife and children take is only by virtue of the
trusts and limitations imposed by that item, and if
the surplus does not pass under the trusts and lim-
itations, it follows that J. L. Fox separately takes
the surplus, as he alone is named in the item as
beneficially interested in the absence of any trust or
limitation. The conclusion is that the testator, in
his special legacies, fixed such trusts and limitations
as he desired to apply to them and the residue of
the estate he gave to the same parties beneficially

interested in the special legacies, but to take absolutely and free from any trusts or limitations.

To the extent herein indicated the decree of the Court of Chancery Appeals is reversed and modified, but as to costs and in the order for remand is affirmed.