# J. W. BOULTON v. OSCAR COCHRAN et al.
## —292 S. W. (2d) 511.

Western Section. Jackson. August 23, 1954.

Petition for Certiorari denied by Supreme Court March 11, 1955.

44

Murray & Murray, Jackson, for complainants.

Carmack Murchison, H. G. Arnold, L. L. Fonville and Wm. T. Diamond, Jr., Jackson, for defendants.

AVERY, J. This is a suit requiring the construction of the will of Mrs. Eula Utley Askew who died March 27, 1951, in Madison County, Tennessee, her will having

been executed December 23, 1950 and probated on the 25th day of April 1951, and presenting only the question of whether the will contains a general residuary clause.

The nature of this will and the questions involved necessitates copying some parts of the will into this opinion, and making explicit reference to others in the order found in the will. We therefore quote and refer to parts thereof as follows:

"I, Eula Utley Askew of Spring Creek, Madison County, Tennessee, being of sound mind and disposing memory—and in realizing life is very uncertain, and death is sure—do make this my last will, every word and figure being in my own handwriting.

"First—my executor hereinafter named is to pay all my just debts, including funeral and burial expenses, including a vault, also a marker at foot of my grave in Hollywood Cemetery. As is my wish to be buried and laid to rest beside my deceased husband J. D. Askew in Hollywood Cemetery, Jackson, Tennessee. I have no immediate relatives living. Father and Mother, three brothers and one sister all preceded me in death. So when I pass out I ask that Mr. and Mrs. J. W. Boulton be notified at once and see after things.

"Second—My wish is that my remains be sent to Griffin Funeral Home and remain there till after time for my funeral at the Spring Creek Baptist Church. I have asked Charles Burnley to decorate my casket. Please notify him. The Boultons will select my casket.

"Third—For love and consideration at my death I will to Robert Stout and his wife, Evelin Stout my place—both houses and real estate."

Thereafter follows a minute description of the real estate, composed of a brick storehouse and lot in Spring Creek, the lot containing 2 acres and 18 poles, on which is located a brick storehouse, 3 room tenant house and barn. Fifteen acre tract of land and a 30 acre tract of land referred to as being purchased from respective parties. The next paragraph devises to the Baptist Church at Spring Creek "United States Government Savings Bonds Series "G" which bonds were payable to testatrix but also provided for payment to her sister, Mrs. Lott, if she survived testatrix, amounting to $2,200, the sister having predeceased her. The next item is $2,000 in "money" to Mr. and Mrs. J. W. Boulton, and to Mrs. Boulton a fur coat, marbletop table, vase, several other items of chinaware and her "big diamond ring." To Evelin Stout a piano, several items of furniture, rugs and the entire contents of a dining room and kitchen, including an electric refrigerator, stove, etc., together with the furniture in the hall, all of which testatrix says shall go with her "place." To Mrs. Jack Phelps, silverware, certain chinaware and "gold sapphire tiffany set ring." Mrs. W. W. Donald, a vase and chinaware. Kate Exum, card holder and plate. Mrs. N. F. Warlick, a "big pin" with earrings to match and beads. Mrs. W. R. Menzies, wicker chair and celery dish. Emma G. Green, cake stand. Birdie Fizzell, preserve dish. Mrs. Eugene Key, salad bowl, candy jar and Japanese jar. Mamie B. Key, a vase. Mary Mills, a silver loving cup. Mrs. J. R. Waller, gilt picture frame. Mrs. Emma Gaskin, cutglass and dish and pic-

ture. Edith Jolly, blue glass dish. Mrs. Bertha Mill, silver ball earrings and pin. Mrs. McAlexander, flowered bowl. Jettye Holmes, glass dish and blue plate. Mrs. Zeppie Longmire, a bowl and pitcher. Helen Brandon, pickle dishes and quilt. Mrs. G. O. Reid, 1 quilt. Grace Holmes, 5 china plates. Annie Moore, 2 vases. Mrs. Floyd McAlexander, picture of 3 horses. Mr. and Mrs. Charles Waynick, Elaskan picture. Mrs. Ray Bernard, handpainted picture.

"Will to Jack Smith $25 in money. Will to Oscar Cochran the leather bottom rocker, also three hundred dollars in money. Will to Larry B. Cochran $1000 in money."

To Nettie Sue McLemore, a plate. Venice Watts, pyrex dish. Mrs. Byars, glass jewelry bowl. Jean Denney, plate and cutglass bowl. Bertha Rogers, pitcher, 4 plates, cutglass pickle dish, linens described, and a black coat. Fannie Seavers, candle holders.

"Will Mrs. B. O. Johnson the little violet holder on mantle. She nursed sister so good while at hospital. Her home address is 431 South Monmouth Avenue, Monmouth, Oregon. At present has an apartment 650 Breys Avenue, Salem, Oregon."

Ruby Christenbury, 3 handkerchiefs, Fannie Sue White, pickle dish. Mrs. Lula McLemore, brown waiter and box. Mrs. Jacobs, candy dish and table. Maude Wood, Haviland plate. Hattie Fly, glass flower basket. Eunice Fly, beads, Leona Pierce, 2 plates. Erma Rowlett, book holders.

"Should any money come in after other things taken care of give it to Oscar Cochran, also hay and

corn if any on hand at my death. He has always been so nice and good to me, and try to help me out every way he possibly could all these years.''

Wilma Stewart, string of pearls. Wanda Denney, gold bracelet, gold hat pin. Vaden Donnell, a glass plate.

Each of the items are minutely described, and practically every sentence beginning a separate bequest begins with the word ''will,'' followed by the name of the devisee or the two words ''willed to.'' The last paragraph of the will is as follows:

''I hereby nominate and appoint J. W. Boulton, my executor—without bond and ask that no lawyer be employed. Twill not be necessary. I have utmost confidence in my executor. In witness whereof I have set my hand this December 23, 1950.''

''Mrs. Eula Utley Askew''

Thereafter the will has a regular attestation clause on it and is subscribed by two attesting witnesses, E. M. McLemore and Floyd McAlexander.

The executor, J. W. Boulton, qualified and is in the process of administering the estate of testatrix who had no children, no brothers, sisters, father or mother living and whose only heirs at law were certain nephews and nieces, Mrs. Cornelia Hudgins, Celia Utley, Mrs. Irene Davenport, Kattie Garrett, Hunter Utley and Sidney Utley, who claim certain United States Government Bonds amounting to $5,800 maturity value and the proceeds of an automobile, cow and twenty-five chickens sold by the executor for $930, contending that as to the bonds, automobile, cow and chickens, Mrs. Eula Utley died intestate.

The defendant, Oscar Cochran, claims said property as one of the devisees, and particularly by virtue of what is referred to as the residuary clause, quoted above.

It should be stated here that the financial situation of the testatrix was practically the same at the time she made the will as at the time of her death.

This case was before the Chancery Court of Madison County upon the pleadings, proof by deposition, and exhibits. The exhibit to the deposition of J. W. Boulton, executor of the will, being a complete inventory of all the property of his testate as filed in the County Court of Madison County, and in which inventory the executor has very minutely and by items described such property.

On the 17th day of December 1953 the Chancellor entered his decree. There is no separate finding of facts by the Chancellor, but the facts are embodied within the decree by which he found:

"That (1) under the terms and provisions of the last will and testament of Mrs. Eula Utley Askew, deceased, all the personal property of which she died the owner, which may remain, after the payment of the cost and expenses of administration and the distribution of the specific legacies was bequeathed to the defendant Oscar Cochran, by virtue of that provision of said last will and testament which reads as follows: 'Should any money come in after other things taken care of give it to Oscar Cochran, also hay and corn if any on hand at my death. He has always been so nice and good to me, and *tried* to help me out every way he possibly could all these years.'

"(2) That the foregoing provisions of said last will and testament constituted and is hereby declared

to be and to have been intended to be a residuary clause whereby all of the personal property of the testator, Mrs. Eula Utley Askew, remaining after the payment of debts, expenses of administration and the distribution of the specific legacies enumerated therein, was bequeathed and devised to defendant Oscar Cochran.

"(3) That the said Mrs. Eula Utley Askew under the terms and provisions of her last will and testament, made a complete and whole disposition of all of her property, real, personal and mixed, and did not die intestate with respect to any of her estate."

Following the above quoted part of the decree the Chancellor decreed that Mrs. Cornelia Hudgins, Celia Utley, Mrs. Irene Davenport, Kattie Garrett, Hunter Utley and Sidney Utley had no interest in the estate of Mrs. Eula Utley Askew as legatees or devisees, and directed the executor to administer the estate accordingly.

He then provided that the cost be paid one-half by the complainant, J. W. Boulton, as such executor and one-half by the relatives of the testatrix.

From the decree of the Chancellor these nieces and nephews of testatrix prayed and perfected an appeal to this Court and have assigned errors in which they challenge the decree of the Chancellor in his holding that the quoted and referred to residuary clause made complete disposition of all of her proprty including the bonds, the automobile, the cow and the chickens because, (1) asserting that the series of gramatically disconnected special legacies and devises evidenced no testimentary intention justifying the holding that the quoted clause

passed the entire residuary estate to Oscar Cochran; (2) and that said clause was a mere conditional legacy of money based upon an uncertain hypothesis, insisting that the word "money" is used in its literal and ordinary sense qualified and restricted by the words "should," "any," "come in," and "after other things taken care of;" (3) that the proof of the circumstances surrounding the execution of the will show that the testatrix had no intention of bequeathing to the appellee her residuary estate of bonds, automobile, etc.; (4) that the will is made up of unconnected series of specific legacies and devises and contains no residuary clause; (5) that the conflict of the legal presumption that the testatrix intended to dispose of the entire estate with the legal presumption that she had no intention to disinherit her heirs, appellants, the latter presumption prevails and (6) that the Chancellor erred in taxing one-half of the cost to the appellants.

Appellants have not attempted to argue their assignments of error separately and we will not do so. In the brief and argument of appellants' counsel, they have presented a carefully prepared contention that, by the application of the proper rules of construction, to the will in question, the Chancellor has fallen a victim of error by speculating as to the intention of the testatrix.

By their application of the rules, referred to in their brief, as governing the will in question, counsel have seen and made a very complicated case, from what to us, and apparently to the Chancellor, presented a very primary, easily reached and conclusive construction of the questioned will, in order to find the real intention of the testatrix.

To support their first contention with respect to the proper construction that the meaning of the referred to residuary clause must be found in the words used in the will, and within that clause itself, without regard to any other disconnected section of the will, they rely upon the case of Fox. v. Fox, 102 Tenn. 77, 89, and 90, 50 S. W. 765, citing Gannaway and Tarpley, 41 Tenn. 572-575, in which Fox case the Court quoted from Jarman on Wills to the effect that independent devises not gramatically connected or united by an expression of a common purpose should be construed separately and without relationship to each other; that a mere similarity of relationship raising a mere conjecture that the testator had the same intention as to both were not sufficient without a design to connect it, and that the intention which actually controls in the construction of the will is that expressed in the will or fairly inferable from its terms, and the Court though morally certain that an intention not so expressed existed, should not so find.

We find no fault with the statement of appellants in that regard, but the case of Fox v. Fox is not a parallel case with the case before us. There was no dispute or question but that the will of the testator in the Fox case contained a complete residuary clause. By the fifth clause of the Fox will, Pervines Fox, Jr. was designated as trustee for J. L. Fox, and as such trustee was given a farm and a sum of money in the amount of $5,000, with the provision that J. L. Fox was to use and occupy the land for himself and family and was to have the interest on the $5,000 for the same purpose, and after the death of J. L. Fox his widow to continue to have the benefit of the trust until her death or remarriage for herself and children, and upon her remarriage or death his children

to have the benefit of the lands or money, and at the death of the trustee and the arrival at the age of 21 years by the children, they were to take the land and money absolutely, the concluding sentence containing a provision that should J. L. Fox live for five successive years a sober, industrious and economic life he was to have the money to do with as he wished.

By the eighth clause of the Fox will it was provided that his executor should reduce all property not specifically devised to cash, and the last clause in that eighth item, after making provision for a pro rata reduction in the payment of each of the bequests in event there was not a sufficient amount of money to pay all of them, provided:

" 'and, if there should be more than is necessary to pay all these bequests, then the remainder will be divided between those named in my will in the same proportion that my estate bears to their respective bequests, except the amount given to my wife, which is not to be increased or diminished by the amount of my estate.' " [102 Tenn. 77, 50 S. W. 766]

The question, therefore, arose whether that this excessive amount over and above the special bequest would go to Pervines Fox, Jr., as trustee for J. L. Fox or to J. L. Fox direct. There was no contention made that this residuary provision left any intestacy on the part of the testator of any property he might have. So the Court, in determining the question in that case, holding that this surplus amount, which was approximately $5,000 to the share of J. L. Fox, went directly to him and not to the trustee for him. It was in no wise a construction of the residuary clause in disposing of any property not specifically mentioned in the will itself.

In the instant case it seems to us that, while there may be no direct connection between the residuary clause in question and some of the other parts of the will, that it does no violence to the rules of construction, as stated in the Fox case or the Gannaway v. Tarpley case, to look to some other parts of the will, hereinafter referred to, as clarifying the referred to residuary clause, even though we feel the residuary clause is complete within itself, and particularly in determining whether it was the intention of the testatrix that it be a general residuary clause.

We further find no criticism whatever with the many citations by counsel to the effect that the Court is not permitted to speculate as to what may have been meant, but is not expressed, or that we should never reject a word in the absence of an ambiguity in arriving at the reasonable meaning of any part of the will. They principally rely upon the case of Martin v. Hale, 167 Tenn. 438, 71 S. W. (2d) 211 and the cases therein cited, the case of Rinks v. Gordon, 160 Tenn. 345, 24 S. W. (2d) 896 and American Nat. Bank & Trust Co. v. Mander, 36 Tenn. App. 220, 253 S. W. (2d) 994. In the case of American Nat. Bank & Trust Co. v. Mander the questions were: (1) Did the first codicil to the will providing for the " 'expenses of the administration of my estate' " to be paid from the devise in Section 4 revoke the sixth section of the original will, providing " 'I specifically direct my executor hereinafter named to pay from and charge against my residuary estate any and all State and Federal Inheritance, Estate or Death Taxes assessed against or collectible from any of the assets (including insurance policies on my life) or any of the beneficiaries (including the beneficiaries of such insurance policies) of my

estate.' '' The Court defined, citing authorities, what was meant in the first paragraph of the original will providing for the payment of all just debts, including funeral expenses, and expenses of administration to be paid by the executor and what was meant by all expenses of administration of "my estate" as related to State and Federal Inheritance Tax or Death Taxes, and held that there was no revocation of any part of the will further holding that such taxes referred to as Death Taxes was not included in the first section of the original will or the first codicil to the will, but was controlled by the specific direction in section 6. Thus, there was no question whatever as to a partial intestacy of the testator.

It is to be noted that the Court reiterated the common law rule and our statutory provision that the "intention of testator is cardinal rule upon which courts are to be governed in construction of wills, and that intention is to be gathered from scope and tenor of the whole will. Testator's intention when fairly ascertained will be given effect unless it is in violation of some established principal of law or in contravention of public policy. For the purpose of ascertaining testator's intention, all parts of the will will be looked to and apparent inconsistences will be reconciled so that each legacy will be sustained if possible to do so without doing violence to language used.''

The case of Martin v. Hale, supra, does not control because there was an express provision in one section of the will in question, which was "Item 2" that " 'and further that at the death of the wife Ellen M. Bryan all of the aforesaid property is to revert to my estate.' '' With that express language the Court held that on the death of his wife that the fee was not devised by Item 2

and that on the death of the testator that fee vested in his next of kin which was his daughters. There was no semblance of a residuary clause in that will.

In the case of Rinks v. Gordon the question involved was whether or not the expressions used in the second paragraph of the will carried a vested or contingent remainder in the estate of the testate all of which, both real and personal had been devised " 'To my sister Carrie T. Webster all of my Real and Personal Estate, during her natural life' " which was immediately followed by the disposition of the remainder, " It is my will that the estate herein devised to my sister Carrie T. Webster at her death shall be equally divided between my sisters Mary C. Gordon wife of Richard C. Gordon, Hattie B. Jones wife of Clark T. Jones and my brother A. B. Webster and Geo. P. Webster share and share alike to them or their heirs, who may be living at the time of my sister Carrie T. Webster's death.' " The Court simply determined that "We think it clear that the testatrix had in mind the division of her estate among persons living at the date of the death of her sister Carrie T. Webster, the life tenant", giving emphasis to the expression " 'share and share alike to them or their heirs who may be living at the time of my sister Carrie T. Webster's death.' " Only Mrs. Mary C. Gordon survived the life tenant. The other sister and the two brothers having died during the life of the life tenant, leaving children who did survive the life tenant. The Court held that the remainder was vested in the sister only. There was no controversy about a residuary clause.

In connection with the contention of appellants they have referred to the case of McDonald v. Ledford, 140

Tenn. 471, 205 S. W. 312, 314, by which they seek comfort from the statement in that case to the effect that,

> "The rule of construction that an heir is not to be disinherited except by express words or necessary ·implication prevails, in case of conflict, over the rule that testator is presumed to have intended not to die partially intestate."

The Court was speaking, however, of one who disregards "one's own offspring" in the words used in illustrating the relative strength of the two rules. In that same case, reported in 140 Tenn. 471, 205 S. W. 312, is a recitation with respect to the presumption against partial intestacy by a testator and it is said that the statute so providing, which is not necessary to quote, "is applicable if the words used, by any fair interpretation, will embrace the property not otherwise devised, *unless a contrary intention appears from the context."* This italicizing is ours because we have no way to type the quotation in italics. In that same case, the Court said that it gave meaning specifically to the introductory clause of the will in which the testatrix had said:

> " '* * * being desirous of disposing of my worldly estate accumulated by years of honest toil of myself with the assistance of my deceased husband, William Ledford, do make and publish this, my last will and testament.' " (and the third item of the will provided:) " 'I give and bequeath all of my property of every kind and character, both real and personal, to my son, John H. Ledford, and his wife, S. J. Ledford. * * * My daughter, Sarah McDonald, has received all of the property accumulated by myself and husband that I desire her to have. Neither do I

want her children to receive anything further from my estate. My said son and wife have cared for me in my old age and sorrow, and I direct that they be compensated for so doing.' '' This will was executed in 1902. The testatrix died at the age of 86 years in 1916. About five or six years before her death, a nephew and a sister of testatrix died leaving her an additional estate of approximately $18,000. The Court held that the daughter, Sarah McDonald, was entitled to inherit a share in the estate so inherited by her mother saying, ''We hold that she as heir should not be disinherited further than is clearly declared, and that any doubt should be resolved in her favor.''

Certainly the Court reached the right conclusion in connection with the construction of the will before it, for it clearly intended to dispose of such an estate as was the result of the joint labor of testatrix and her husband. In the opinion, the Court referred to the case of Evens v. Griscom, 42 N. J. L. 579, 36 Am. Rep. 542; 40 Cyc. 1402 the expression that '' 'the judicial learning should be to the retention of every word' '', but before inserting that quotation in its opinion, the Supreme Court said:

''To justify the suppression of a single descriptive term, that term must plainly be out of harmony with the other parts of the demonstration, after putting a reasonable construction upon the entire descriptive context.''

Without further quoting any decisions, many of which could be referred to in this opinion, on their contention, let us bring together a few of the expressions of the testatrix in the will before us. We have already quoted

that part of the will contained in the preamble and the first three paragraphs of the will. In that preamble the testatrix nowhere intimates that she intends to dispose of only a part of her estate, as was the expression in the will of Mrs. Ledford. To the contrary Mrs. Utley is saying that "I * * * do make this my last will, every word and figure being in my own handwriting. * * * I have no immediate relatives living, father and mother, three brothers and one sister all preceded me in death." In the third item she said, "For love and consideration at my death I will to Robert Stout and his wife Evelin Stout, my place—both houses and real estate." Then followed the bequest to the church, the Boultons, and immediately thereafter is found the expression, "I will to Evelin Stout my piano, my living room suit and China cabinet and the rug in the center of the floor. *She and Robert Stout being good as gold to me,* also to Evelin my small strand of long pearls, my 4-piece bedroom suite, swinging electric lights, covering on floor and drapes at windows, coverings on all floors. Only take such things out of the rooms I *designate.* I am willing her things in the dining room and kitchen, table, electric stove, also electric refrigerator. In fact everything in kitchen and dining room, and also hall to go with my place, I wish that the Robert Stouts would move into house soon as can so as to take care of things. *Since he has promised* to do that." The first italics above is that of the Court; the last is a part of the will.

While the will in question clearly shows the sincerity of the friendship of the testatrix for her neighbors and friends, and particularly Mr. and Mrs. Boulton, nowhere in the will has she expressed such affection for any person or persons as she has expressed for Robert Stout,

his wife, Evelin, and her appreciation for kindnesses shown her, as expressed in the will for Oscar Cochran. He had helped her about the farm for a substantial number of years. R. 28, 29, 61, 65.

In addition to such expressions found in this will for them the evidence clearly shows that prior to the execution of this will Mrs. Askew had made a will by which she had devised everything she had to this family of Cochrans, R. 64, 72, except a few "keepsakes" to friends. R. 73. The will now before us revoked that will or she destroyed it prior to making the will here considered. Certainly if the former will had been her last testament her relatives would have taken nothing. No change of attitude in that regard is indicated by her in the present or last will. So, if the residuary estate passes to Oscar Cochran the ones for whom she expressed her affection and her appreciation for services receive the bulk of her property.

While the will was written by the testatrix, in her own handwriting, it does not appear that she had any suggestions or help from any person in preparing it, and it indicates, very clearly, that she knew something about the procedure in the administration of the estate of a testate, for she, after having written out this long, itemized will, named an executor and provided that he would employ *"no lawyer"* saying, "Twill not be necessary. I have utmost confidence in my executor."

It is very evident, from the inventory of the estate filed and evidence adduced, that there was not sufficient money on hand when the will was made, had testatrix died immediately, or at the time of her death some three months later, to pay the special "money" bequests, the

cost of the administration of the estate, inheritance tax, etc. She must have known all of this would have to be taken care of from such money as came into the hands of her executor, regardless of whether it was by conversion of certain of her other properties to cash or from the cash on hand at the time of her death. So, after designating the many items as legacies to so many different friends, and such of the bonds as was necessary to describe in the bequest to her church, she provided that:

"Should any money come in after other things taken care of give it to Oscar Cochran, also hay and corn if any on hand at my death. He has always been so nice and good to me and try to help me out every way he possibly could all these years."

■ Coupling this expression of his goodness and kindness to her, with the fact that she used the words "love and affection" and other similar expressions with respect to the Stout family to whom she gave her real estate, and arranging for the normal administration of her estate, this last quoted provision must be construed to be a residuary clause, unlimited by whatever meaning may be given "should" or to the world "money," or to any difference in descriptive character of these words to the words "hay and corn," used therein.

■ The testatrix did not have to authorize the executor to reduce to money her residuary estate. Normally he would have been required to do so. Assuming that she knew what her executor would normally and legally do it appears to us, and we so hold, that the above residuary clause was correctly interpreted by the Chancellor and legally means the same thing as if she had said "all the funds coming into possession of my executor, after the other legacies, bequests and devises herein made,

together with the hay and corn, I will to Oscar Cochran."
It appears to us that the word "any" is an all inclusive
word and that the expression "should any money come
in after other things taken care of" means that property
coming into the possession of her executor and reduced
to cash, which is over and above that required to other-
wise comply with every bequest contained in her will.
The executor could have and may now, if he has not done
so, reduce the bonds to "money." However, the bonds,
as well as other medium of exchange are obligations
of our Government and evidently were regarded as
"money" by testatrix.

██ Two of the basic and fundamental rules govern-
ing the construction of wills, and which appear on the
surface of our many decisions construing wills are: (1)
That a testator is presumed not to intend to die intestate
as to any part of his property, and the courts will resort
to any fair and reasonable interpretation to prevent
partial intestacy. Sizer's Pritchard on Wills, Sec. 386;
Fry v. Shipley, 94 Tenn. 252, 253, 255, 29 S. W. 6; Oldham
v. York, 99 Tenn. 68, 41 S. W. 333. (2) Testator's inten-
tion should be ascertained from the will itself, but the
courts will look to the facts and conditions surrounding
him, Sizer's Pritchard on Wills, Sec. 384; Fry v. Shipley,
supra. Many other citations could be made, but we
conclude it unnecessary.

Mrs. Askew lived alone. Her husband had been dead
several years. None of her nieces or nephews had been
associated with her in the past twelve to fifteen years.
She had gotten to be dependent upon her neighbors and
close friends for help about her home, her farm and
attending to her business. Oscar Cochran and family
had been attentive to her. They were made the bene-

ficiaries to practically everything she had by a former will.

In the case of Fry v. Shipley, [94 Tenn. 252, 29 S. W. 7] the testator had many nieces and nephews but he only remembered one of them in his will. He gave his farm or real estate and provided that in event he sold his real estate before he died that one should have the proceeds. The residuary clause in that will was contained in the fifth item as follows:

" 'I will and bequeath to my nephew James W. Orr all the money arising from sale of my stock, of every kind, and all of my loose property, of every kind, which I direct to be sold as the law directs.' "

The contention was made that the word "money" was qualified by the provision " 'arising from the sale of my stock, of every kind' " and that the expression " 'loose property, of every kind' " could not include notes that the testator had, that his other nieces and nephews took their share in those notes, the contention being that testator died intestate as to such property. The Court held to the contrary view and declared the fifth clause to be a complete residuary disposition of all of his estate not specifically disposed of by the first four items of his will.

In that case, as in the instant case, the defendants seeking to have will construed as only a partial testament, sought to have the rule of ejusdem generis applied since the words "loose property" are limited and defined by the words preceding " 'stock, of every kind.' " The Court overruled such contention.

We have a right to look at the expressions found in the preamble of the will before us, which were quoted

herein above; to the conditions under which testatrix lived the last several years of her life; to her expressions of affection and appreciation for Oscar Cochran and his family; to the fact that she nowhere mentions, by name any one of her relatives; to the fact that she knew they existed; to the fact that they paid no attention to her; to the fact that she had given them nothing by a prior will; to the way and manner in which she kept her money and bonds about her home; to the fact that she had told her executor where they were. After giving careful consideration to every phase of the contention of the nephews and nieces that Mrs. Askew died intestate as to some of her property, and looking at the will from its "four corners," we are constrained to overrule every contention of the defendants, appellants here, and to affirm the decree of the Chancellor in finding that it was the intention of the testatrix to dispose of all of her property, not to die intestate as to any part of it, and that her will effectively does so.

We are of the opinion, however, that this suit was necessary and that the executor acted properly in filing the original bill. Regardless of the fact that the testatrix decided no lawyer should be employed, from the very fact that she consulted none and wrote her will herself, the provisions of which gave rise to this suit, we do not feel it proper that any part of the cost in this Court or the Lower Court should be taxed to the defendants, but should be paid out of this residuary estate, and by the executor before disbursing the residue. To that extent the decree of the Chancellor is modified. Decree will be entered in accord with this opinion.

Carney and Bejach, JJ., concur.