DWAYNE DEAVERS, Complainant-Appellant, v. R. B.
DEAVERS et al., Defendant-Appellees.—457 S.W.2d 618.

Middle Section. February 27, 1970.

Certiorari Denied by Supreme Court August 17, 1970.

Leech & Hardin, Columbia, for complainant-appellant.

Keaton, Haggard, Turner & Scott, Hohenwald, for defendant-appellees.

TODD, J. This is a partition suit wherein the Chancellor, sitting without a jury, found that complainant had no interest in the property described in the bill and dismissed the suit; and Complainant has appealed.

Complainant is the grandson of B. O. Deavers and wife, Kate Jane Deavers, who had seven children of whom six survive but the seventh, the father of complainant, is deceased. As the sole child of one of the seven children, complainant claims a one-seventh interest in the lands owned by Kate Jane Deavers at her death.

It is insisted by defendants that complainant inherited no property from Kate Jane Deavers because of her last will and testament which read as follows:

"At my Death

"I want Orion to have everything Ive got quilts Beds and Pillows he has stayed home gave all his work and time to help keep Home he been good to me through all my work taking me to Church seeing to taking me everywhere I ask him most God bless Orion

"My Clothes Dean can make in to quilts are for the children but everything els I have is Orions Please dont let no one bother him about anything Please all you children go to Church get ready to meet me in heaven I have done all I Can do I have longed to get to be with you all in Church But dont forget me for where I failed dont loose your Soul. I love everbody Meet me there where we Never Part again

Mama

"Pearl has one hundred dollars in the Church fund Pleas dont forget to Pay her back do always keep the Church open to Pentecostal Ministers would love for the Bro R. C. and Lloyd Mays to take charge also Bro Ivey Still come ever month.

Mrs. B. O. Deavers"

At the time of her death on March 5, 1962, Kate Jane Deavers was the owner of the real estate involved in this controversy. The above quoted will was found among her effects, shown to her surviving children, and preserved in the "funeral book," but it was not probated at that time. Instead, the six surviving children joined in a deed con-

veying to their father, B. O. Deavers, "all the right, title, claim and interest we have" in the property in controversy. The seventh child, Curtis Edison Deavers, father of complainant, had predeceased his mother, hence he did not join in said deed. Complainant, who was a minor at the time, did not join in said deed.

During the remainder of his life, B. O. Deavers conveyed various parcels of said real estate until, at the time of his death on May 22, 1966, he owned no real estate whatsoever.

The original bill was filed in this cause on May 2, 1967. On November 25, 1967, the above quoted will was offered for probate. Upon contest, the circuit court adjudged and certified that said will was the last will and testament of Kate Jane Deavers.

Thereafter complainant filed a supplemental bill reciting various theories upon which complainant based his claim to one-seventh of the real estate of Kate Jane Deavers notwithstanding her said will.

Upon issue duly joined, the cause was heard orally without a jury. The Chancellor rejected all of complainant's contentions and dismissed the bill.

Complainant's first assignment of error is:

## I.

"The Honorable Chancellor erred in construing the holographic Will in this cause and finding that Kate Jane Deavers conveyed all of her property thereby, both real and personal, against the weight and preponderance of the evidence presented and contrary to established principles of law."

Complainant insists that the will is not intended to devise real estate. It is insisted that the expression "everything Ive got" is limited by the following words, "quilts, Beds, and Pillows," and that the expression, "everything els I have is Orions," is limited by the preceding words, "My Clothes Dean can make into quilts are for the children." That is, complainant insists that the word "everything" referred only to household effects such as quilts, beds, pillows, and clothes.

■ Complainant cites 57 Am.Jur., Wills, sec. 1362, which reads as follows:

"Sec. *1362*. '*Things,*' '*Other Things,*' '*Everything,*' *etc.*—Although doubt has, on occasion, been expressed as to the propriety of applying the rule of ejusdem generis to a testamentary gift listing designated items and concluding with the word 'things,' in view of the exceptional generality of that word, in many instances the ejusdem generis doctrine has been invoked to restrict the meaning of such expressions as 'things,' 'other things,' and 'everything,' as used in a devise or bequest. The ultimate factor in the interpretation of testamentary gifts in which the expressions 'things,' 'other things,' etc., are used is, however, the testatorial intention, and divergent results have been reached in particular cases with respect to the question of what the testator intended by the use of terms of the kind under consideration. Under some circumstances, such terms have been held, for example, to pass ships, real estate, or the testator's residuary estate generally.

"It has been stated broadly that the word 'things,' as used in a will, may, where the testator so intends, be given as extensive a meaning as the words 'effects,' 'goods,' 'assets,' or 'property.'"

41 A.L.R.2d 947 annotates a number of cases interpreting testamentary disposition of "things," "personal things," and "all my worldy things," but no case therein interprets the word, "everything." Said article cites a number of English cases wherein "things," "all things," or "other things" were given restrictive interpretations, however in the case of In re Arnold's Estate, 240 Pa. 261, 87 A. 590 (1913), it was held that a bequest by an unlearned testatrix of "any jewelry and other personal things" would pass stocks, bonds, and cash. In said case, it was held that if so intended the word "things" may be given as extensive a meaning as the words "effects," "goods," "assets," or "property."

Complainant cites Ford v. Cottrell, 141 Tenn. 169, 207 S.W. 734 (1918), wherein a devise of realty was ineffective because of an ademption by sale during the lifetime of testatrix. There was no devise of "everything else" as in the present case.

In 96 C.J.S. Wills sec. 748, pp. 144, 145, 146 is found the following text.

"Where an expression of more general description precedes or follows the enumeration of certain things, the general description is commonly understood to cover only things of a like kind with, or the same general nature as, those enumerated, since it is presumed that the testator had in mind only things of that class. Thus, where the term 'personal belongings' has been employed as a general description·appended to an enumeration of particular personalty, the phrase has usually been held to include only things ejusdem generis with the items particularly mentioned; and this is also true of similar expressions.

"However, this rule of construction is easily rebutted by anything that shows that the larger subject was in fact in the testator's view; the rule, or doctrine, is not one of property, but its application is considered by the courts whenever an ambiguity in testamentary language is presented, and it is of value only as an aid to the discovery of the testator's intent. So, the rule does not apply if the intention of the testator is manifested to the contrary, as where an intestacy would otherwise be created, or when such general expression occurs in a residuary clause, or in a general bequest of the testator's estate, or in a will that does not contain a residuary disposition."

In Arnold v. Groobey, 195 Va. 214, 77 S.E.2d 382 (1953) a prominent attorney concluded his will with the words "any other property—my interest in the Home Estate at Waverly—is given to my brother * * *," which were held to dispose of all of the residue of the estate.

From the foregoing authorities, it must be concluded that the will of testatrix herein, if ambiguous, is susceptible to the interpretation adopted by the Chancellor, namely that "everything," including real estate, was bequeathed and devised to Orion Deavers.

Complainant next insists that the Chancellor failed to consider the circumstances under which the will was made.

In Boulton v. Cochran, 41 Tenn.App. 43, 292 S.W.2d 511 (1954) this Court said:

"[3, 4] Two of the basic and fundamental rules governing the construction of wills, and which appear on the surface of our many decisions construing wills are:

(1) That a testator is presumed not to intend to die intestate as to any part of his property, and the courts will resort to any fair and reasonable interpretation to prevent partial intestacy. Sizer's Pritchard on Wills, Sec. 386; Fry v. Shipley, 94 Tenn. 252, 253, 255, 29 S.W. 6; Oldham v. York, 99 Tenn. 68, 41 S.W. 333. (2) Testator's intention should be ascertained from the will itself, but the courts will look to the facts and conditions surrounding him, Sizer's Pritchard on Wills, Sec. 384; Fry v. Shipley, supra. Many other citations could be made, but we conclude it unnecessary." 41 Tenn.App., p. 62, 292 S.W.2d at p. 519.

The circumstances are those which existed at the time of the execution of the will. Greer v. Anderson, 36 Tenn. App. 507, 259 S.W.2d 550 (1953).

The will was undated, and there is no suggestion as to the probable period during which it was made, however certain undisputed facts form the background for the will under consideration.

■ Testatrix was a farm housewife who was deeply religious and who led religious services in a small rural chapel. Her husband was 21 years older than she and attended to the management of all business affairs. As he purchased real estate, it was deeded to his wife.

From time to time, testatrix and her husband conveyed portions of real estate to their various children, however, no such conveyance was ever made to the father of complainant, and the deed which was made to Orion was never recorded by him.

Orion Deavers never married. Except for a period of employment in a government "C.C.C. Camp" during the

depression, and service in the armed forces during World War II, Orion never lived away from the homeplace. He stayed with his parents on the farm and took care of them during their declining years. The mother was afflicted with extreme obesity, and "getting around" was a problem which required considerable assistance from the son.

Complainant's father, Curtis Edison Deavers, died in 1944. Thereafter complainant and his mother resided in the home with his grandparents and Orion about six years until complainant's mother remarried. Thus complainant had not lived in the home of deceased since about 1950.

Complainant's brief alleges, but does not demonstrate that the Chancellor ignored the surrounding circumstances. On the contrary, the circumstances just recited support the conclusions of the Chancellor and it must be presumed that he considered them. In any event, upon appeal de novo, this Court has considered all circumstances disclosed by the record and has reached the same conclusion reached by the Chancellor. It was perfectly natural and normal for this mother to leave all she had, including realty, to the son who had never married, had stayed home and had taken care of her. All other living children had been "taken care of" by the aforementioned transfers of realty. Curtis Edison Deavers had died in 1944 and his son, complainant, had not lived with testatrix since 1950. The omission of complainant from the distribution by deed or will is natural and understandable.

Complainant relies upon the presumption that a testator intended his property to follow the legal channel of descent. In order to indulge this presumption, it would

be necessary to conclude that testatrix intended to die intestate, as a result of which her real property would be divided equally among her seven children or their heirs. This would involve a re-distribution of the home place in spite of the clear intention (expressed in the deeds) that the distribution made by the deeds was in lieu of further inheritance.

Complainant cites Fox v. Fox, 102 Tenn. 77, 50 S.W. 765 (1899), wherein the issue was whether the residuary clause provided distribution to the heir absolutely or to a trustee for the benefit of the same heir. This question is not involved in the present case.

Complainant cites Nichols v. Todd, 20 Tenn.App. 564, 101 S.W.2d 486 (1936) wherein the question was whether the devise to the husband of testatrix was for life or absolute. The court did observe the natural inclination of a childless wife to provide for her husband's necessities, but to reserve the remainder for her own collateral heirs rather than to devise the property absolutely to the husband, whereby the remainder would go to the heirs of her husband. No such relationship is involved in the present case. The complainant grandson can claim no closer affinity or legal right of heirship than the one against whom he claims, a child of testatrix.

Complainant cites Spencer v. Stanton, 46 Tenn.App. 688, 333 S.W.2d 225 (1959), which involved the meaning of the word "heirs." In that case the heirs of the deceased were determined to be the relatives of his father, rather than the relatives of both parents. The case is not analogous.

Complainant relies upon Davis v. Mitchell, 27 Tenn. App. 182, 178 S.W.2d 889 (1943), wherein this Court

recognized a presumption of intention to devise to those of testator's blood above others not so closely related. The presumption relied upon by complainant is not conclusive in character, even if applicable. As stated in Siler v. Siler, 152 Tenn. 379, 277 S.W. 886 (1925)

"A presumption is a substitute for evidence. * * * as an inference of fact which the law assumes to be correct, it establishes, *in the absence of evidence to the contrary,* a prima facie case * *" 152 Tenn. at 386, 277 S.W. at 887 (Emphasis Supplied).

In Cox v. Nance, 24 Tenn.App. 304, 143 S.W.2d 897 (1940) this Court said:

"A presumption of fact is that mental process by which the existence of one fact is inferred from proof of some other fact or facts with which experience shows it is usually associated by succession or coexistence." (citing authorities) 24 Tenn.App. at 307, 143 S.W.2d at 899.

In Berretta v. Am. Cas. Co. of Pa., 181 Tenn. 118, 178 S.W.2d 753 (1944) it is said:

"A presumption is only a name for a conclusion reached by means of the weight of proven circumstances." 181 Tenn. at 124, 178 S.W.2d at 755.

■■ Except in cases where the law makes a presumption conclusive, presumptions are controlling only in the absence of contradictory facts and circumstances. Where the trier of facts has heard evidence of circumstances which both support and contradict a presumption of fact, it is for the trier of fact to weigh the evidence and to reach what appears to be the most probable conclusion

of fact. This was done by the Chancellor. The same has been done by this Court on appeal.

As stated, the cause was tried orally by the Chancellor without a jury. Under such circumstances, the cause comes to this Court for trial de novo accompanied by a presumption of correctness unless the evidence preponderates otherwise. T.C.A. sec. 27-303. The evidence does not preponderate otherwise.

The first assignment of error is respectfully overruled.

The second assignment of error is as follows:

"The Honorable Chancellor erred in finding an acceptance of the devise under the holographic Will in this cause and in failing to find a renunciation of the benefits thereunder."

This assignment is founded upon the proposition that Orion Deavers, the principal beneficiary of the above quoted will, was aware of the existence of the will but renounced his rights thereunder by failing to promptly probate the will, by allowing his father to act as administrator of the estate of his mother as though she died intestate, by approving the settlement of said estate, by joining in the deed from the children to the father as "one of the heirs at law of Kate Jane Deavers" and by failing to take any affirmative action evidencing his acceptance of the devise upon which he now relies.

Complainant cites Bradford v. Calhoun, 120 Tenn. 53, 109 S.W. 502 (1908), wherein the devisee executed a written instrument renouncing all interest in the devise, and filed said instrument with the county court clerk nine days before the probate of the will. It was held that such renunciation defeated the claim of a judgment creditor

who had attempted to levy upon the property devised to but renounced by the judgment defendant. The pronouncement of the Supreme Court in such a conclusive case of renunciation can hardly be controlling in the present case where renunciation rests upon inactivity of the devisee, which inactivity is fully and satisfactorily explained by the family relationship.

Equally inapplicable is In Re Hodges Estate, 20 Tenn. App. 411, 99 S.W.2d 561 (1937) wherein the beneficiary of a $1000.00 bequest gave the administrator C.T.A. a receipt for said amount without consideration. Under disputed evidence as to the reason for giving the receipt, this Court held the receipt to be a valid disclaimer or renunciation.

██ It is true that defendant, Orion Deavers, testified that ''he did not claim it'' and ''he did not want it,'' but he explained that this attitude was taken in deference to the needs of his father during his lifetime, and limited to this time and purpose. It would be a grotesque distortion of natural justice to hold that a son who inherits his mother's lands cannot convey same to his father for his needs without renouncing the very interest which he in fact conveys, and by the very act of conveyance creates a defect in the title being conveyed.

Appellant cites no other authorities in support of his other grounds of renunciation, summarized supra, which are not deemed sufficient.

The record does not disclose a renunciation on the part of Orion Deavers.

The second assignment of error is respectfully overruled.

The third and fourth assignments of error are as follows:

## III.

"The Honorable Chancellor erred in finding that the Appellees were not estopped to take under said Will, or that they had made no election adverse and contrary thereto.

## IV.

"The Honorable Chancellor erred in not finding the Appellees were judicially estopped to claim under said Will in view of the uncontradicted testimony concerning their actions and conduct in treating the estate of Kate Jane Deavers as an intestacy and in administering and closing the same as such."

Complainant relies upon actions of all of appellees, the adult children of Kate Jane Deavers, however, the rights of complainant and the defense of appellees depend upon the effect of the devise to Orion Deavers alone. Thus the estoppel asserted by complainant rests only upon the acts of Orion. The acts of his brothers and sisters, who do not claim under the will, cannot affect the rights of Orion who does claim under the will.

31 Am.Jur.2d 244, cited by appellant, refers to estoppel from participating in the administration of a personal estate, and has no bearing upon title to real estate which has never been subjected to administration by insolvency proceedings.

Sec. 39-1943 T.C.A., relied upon by appellant applies to *corrupt* destruction or concealment of a will with intent

to prevent probate or defraud a beneficiary. No violation of this statute is shown by the evidence.

In Fransioli v. Podesta, 175 Tenn. 340, 134 S.W.2d 162 (1939) cited by appellant, an holographic will was offered for probate and rejected as a formal will because not found among valuable papers, as was then required by law. Thereafter, the same will was re-offered and upheld as an informal will competent to pass personalty. The Supreme Court did allude to the duty of the widow to offer the will for probate, but made no suggestion that failure to offer or delay in offering to probate a will would estop a claim thereunder.

Appellant alludes to the failure of appellees to notify appellant or to include him in any of their dealings. Such neglect of a kinsman does not produce estoppel.

In Duncan v. Peebles, 28 Tenn.App. 592, 192 S.W.2d 235 (1945) this Court said:

"[5] In complainant's bill in the instant case she alleged that she is a beneficiary under the will of Mrs. Billingsley by having been devised the homeplace, and also seeks a decree vesting in her the personal property described in the bill and which was devised to the defendant and other beneficiaries. Thus it is shown that she accepts the provisions of the will in her favor and is attacking other provisions of the will."

Thus this opinion distinguishes itself from the case presently under consideration.

Colvert v. Wood, 93 Tenn. 454, 25 S.W. 963 (1894) concerned claimants who had dissented from a will, received their dissenters' part, and thereafter claimed other interest in the estate. Nashville Trust Co. v. Winters, 23

Tenn.App. 262, 130 S.W.2d 152 (1939) involved a situation wherein testator had mistakenly devised property which he did not own. This Court held that the true owner of the property devised by mistake must waive his interest therein before he can claim other property devised to him by the same will. Thus, the legatee was required to accept or reject the will in toto, rather than to accept the favorable part and reject the unfavorable part.

Appellant calls attention to the admitted fact that after the death of their mother the remaining adult children conveyed to Orion Deavers the same 30 acre tract which had previously been deeded to him by his father and mother, the earlier deed having never been recorded by him. It is insisted that by accepting the deed from his brothers and sisters rather than relying upon the devise in his mother's will, Orion thereby waived his claim under the will. No authority is cited for this legal proposition. In explanation of the second deed, Orion affirms his ignorance of the full legal effect of the will at the time the deed was passed and states that the first deed had a defective acknowledgement. Even if the second deed were passed with full knowledge of the legal effect of the will, it cannot be said that acceptance of the deed would invalidate a claim under the will. To thus hold would be to place an unjust penalty upon the cautious who obtain an unnecessary conveyance to insure perfection of title.

Appellant cites a number of authorities for judicial estoppel resulting from sworn representations in former judicial proceedings. However, no action by defendant, Orion Deavers, is cited which would judicially estop him from claiming under his mother's will. The actions cited are:

(a) total and complete disregard of the last will and testament. (This is not an action taken in a judicial proceeding.)

(b) proceeding to have an administrator appointed. (Orion did not have this done, he merely acquiesced in the administration which did not deal with the property in controversy.)

(c) completion of several land transactions in the administration of the estate. (The administration of the estate involved no land transactions.)

(d) final settlement of the estate with approval of the heirs. (Orion did approve final administrator's settlement which did not involve real estate.)

The third and fourth assignments of error are respectfully overruled.

The complaint of appellant that he was ignored, neglected and passed by in the distribution of the farmland of his grandparents is understandable, but it is no ground for setting aside the plain testamentary disposition of the residue to Orion. The courts simply are not empowered to equalize a valid but unequal disposition of an ancestor's property among descendants.

No error has been found in the decision of the Chancellor. His decree dismissing the cause is affirmed. Costs of this appeal are assessed against the complainant-appellant, Dwayne Deavers.

Affirmed.

Shriver, P. J. (M.S.), and Puryear, J., concur.