## EFFIE WALKER WELCH et al. v. A. B. C. COAL COMPANY, Inc.—293 S. W. (2d) 44.

Middle Section, at Nashville.  March 30, 1956.

John W. Gill, Monterey, Lewis S. Pope, Nashville, for complainants.

Turner & Case, Jamestown, for defendant.

## I.

SHRIVER, J.  A very clear and concise statement of the case was made by solicitors for appellant, A. B. C. Coal Co., Inc., substantially as follows:  The original bill was filed by Effie Walker Welch and others in the Chancery Court of Putnam County on May 21, 1952, alleging that complainants were the owners and in possession of a tract of land described in the bill, and that the defendant, A. B. C. Coal Co., Inc., was committing trespass upon said land by cutting and removing timber and by attempting to enclose and take possession of a portion of the land.  The bill prayed for a temporary injunction to be made perpetual upon the hearing, enjoining the alleged unlawful acts.

The answer denies that complainants own the land and that they were in adverse possession of same at the time. The answer also pleads adverse possession of the land for more than twenty years and adverse possession with color of title for more than seven years, in bar of the suit, and avers that complainants have failed to have the land assessed for taxes and have failed to pay the State and County taxes for a period of more than twenty years in further defense of the suit.

Defendant later filed a cross-bill alleging that it was the owner and entitled to immediate possession of the land in question; that complainants were attempting to take possession of it and had cleared and fenced a small lot at a remote place in the woods; and, in effect, alleging that the complainants were attempting to take possession and maintain same by injunctive process incident to the original bill. The cross-bill prayed for a decree for the land and a writ of possession, if necessary, to place cross-complainant in possession, and also for an injunction restraining cross-defendants from interfering with cross-complainants' title and right of possession.

Cross-defendants answered, denying the material allegations of the cross-bill.

The cause was heard under the usual Chancery Rules, on depositions, by Chancellor Glenn W. Woodlee, sitting by interchange with the regular Chancellor, A. F. Officer.

In a written opinion, the Court held that the original complainants were in actual possession of the land in question, at the time the original bill was filed; that they had some two acres enclosed, claiming title under a recorded deed purporting to convey title; that the possession was peaceable, quiet, open, visible, notorious and

exclusive, and that they were entitled to maintain the original bill to enjoin defendant from interfering with complainant's possession.

A decree was entered accordingly, sustaining the original bill and dismissing the cross-bill.

The defendant and cross-complainant, A. B. C. Coal Co., Inc., excepted to the adverse action of the Chancellor and prayed an appeal which was granted and duly perfected.

## II.

Errors have been assigned as follows:

"1. The Court erred in holding that complainants were in actual possession of the land in question at the date the original bill was filed; in holding that the possession was peaceable, quiet, open, visible, notorious and exclusive; and in holding that complainants were entitled to maintain the original bill to enjoin defendant from interfering with their possession.

"2. The Court erred in holding that defendant and cross-complainant had failed to show title to the land in question and right to possession, and in dismissing the cross-bill at the cost of defendant and cross-complainant."

## III.

The Chancellor, in his opinion and decree, correctly stated the issues as follows: "The record, which is somewhat on the voluminous side, presents only two possible issues for determination. (1) Has cross-complainant proven title to the land in question and right to posses-

sion, and if not, (2) are the original complainants entitled to maintain their suit to enjoin trespass?''

A stipulation was entered into by counsel for the parties and is shown in the *record* at *page 439*. This stipulation is to the effect that the fenced lot shown by pencil mark on the map filed as Exhibit No. 15 to the deposition of A. J. McGuire, was built and maintained by the complainants and that one acre of the lot of land enclosed by the fence is located on the first tract of land described in the amended answer filed by cross-defendant, and is located on the land sought to be recovered by cross-complainant herein. It is also stipulated as follows: ''It is further stipulated that the original defendant and cross-complainant herein had no possession of any type or character on any of the land described in the pleadings at the time the original bill was filed.''

Since it is stipulated that defendant and cross-complainant had no possession of any type or character on any of the land described in the pleadings, it remains to consider in this connection whether or not the complainants had possession.

■ The witness, John W. Gill, whose testimony appears at *pages 166 et seq.* of the *record,* testified that he was agent for the complainants looking after this land since 1933. He stated that there was no possession of any type or character on any of the land involved herein when he constructed a woven wire fence on posts on said land and began clearing same on or about February 1, 1952.

Mr. Gill testified that he employed J. C. Jernigan to do this work and that the clearing was begun immediately upon the erection of the fence, and that the fence was

built and clearing was done before the bill was filed. He stated they were getting this land ready for cultivation and did sow it down in August or September 1952.

The testimony of Mr. J. C. Jernigan in the *record* at *pages 31 et seq.* is to the effect that he actually built the fence on the lot in question and that it was a woven wire fence with a barbed wire on top, enclosing approximately two acres. He also testified that he took a lease on this property as a whole, and this lease was filed as exhibit to his testimony. (Tr. p. 64)

Mr. Jernigan's testimony was to the effect that it was in February 1952 that he built the fence in question; that the land was cleared and bushed off with a bull dozer and sowed in turnips.

Mr. J. A. Allred who is president of defendant A. B. C. Coal Co., testified (R. p. 357) that he didn't think there was any fence of any kind on this tract of land when he first went on it, but a month or so later he was back there and found that some land had been cleared and a fence had been put around it, and that this was in the early part of the year 1952. When he found this fenced tract he went to see his lawyer about it. He further stated that some time after he discovered this fenced and cleared plat of land, he sent two men in there to do some clearing but that this work was stopped because of the injunction in this case.

On cross-examination he stated that he saw the possession that the complainants had acquired, or claimed, on this property some time in the early part of 1952, a month or so after Christmas of 1951.

Counsel for defendant make some question as to whether or not the possession acquired by the complainants was on an abandoned road or in some remote place so as to be ineffective. The record shows that the plat of ground which was fenced by complainants was on a road that was considerably traveled, and we are impressed that this question must be resolved favorably to complainants.

This is particularly true inasmuch as it is admitted by agents of defendant that they knew of the possession.

Knowledge of possession was not only testified to by the president of the defendant company, but the record shows that, in April 1952, Mr. Gill, agent of complainants, and who was looking after the land in question, received a letter from attorneys representing defendants, referring to the fact that the enclosure had been made on behalf of the Welch heirs, complainants herein, and demanding that the fence be removed, and asserting that legal action would be taken unless the request was complied with.

Thus it is seen that the Chancellor was justified in concluding (1) that the defendants had acquired no possession whatever of the land in question or any part of it, while the complainants had established possession of the land prior to the filing of the bill, and that they were in actual, peaceable, quiet, open, visible and exclusive possession at that time.

## IV.

We come next to the question whether or not the cross-complainant proved title to the land involved herein.

■ In order to recover land in ejectment, proof as to the fact of possession must be shown by evidence that is clear and convincing.

"To eject the possessor of land or to remove a cloud from title, the plaintiff must aver and prove title in himself." King v. Coleman, 98 Tenn. (14 Pickle) 561, [Syl. 5] 40 S. W. 1082; 40 L. R. A., N. S., 883, note; 46 L. R. A., N. S., 507, note; Clay v. Sloan, 104 Tenn. (20 Pickle) 401, 58 S. W. 229.

And Equitable Title will not Avail.—Hopkins v. Toel's Heirs, 23 Tenn. (4 Humph.) 46; Langford v. Love, 35 Tenn. (3 Sneed) 308; Edwards v. Miller, 51 Tenn. (4 Heisk.) 314.

"In ejectment the plaintiff must recover upon the strength of his own title, not upon the weakness of his adversary's." Walker v. Fox, 85 Tenn. 154, [Syl. 4] 2 S. W. 98; Evans v. [Belmont] Land Co., 92 Tenn. 348, 21 S. W. 670; Keel v. Sutton, 142 Tenn. 341, 219 S. W. 351.

■ As has been held in numerous cases, the plaintiff in ejectment cannot recover even against a naked trespasser without proof of a perfect title. See Demarcus v. Campbell, 17 Tenn. App. 56, 65 S. W. (2d) 876 and cases therein cited.

■ Under our authorities, there are four ways in which a party can become the owner of the legal title to land in Tennessee, as follows: (1) by a connected chain of title deraigned from either the State of Tennessee or North Carolina. (2) Deraignment of title to a common source. (3) By seven years adverse possession under a registered assurance of title where the land has been

granted by the State. (4) By twenty years actual adverse possession, which is an assurance of title because it creates the presumption of a grant. Walsh v. Rose, 29 Tenn. App. 78, 193 S. W. (2d) 118.

As was found by the Chancellor, the first deed in cross-complainant's chain of title was that of Henry Lane et al. to R. L. Walker, and W. S. Blaylock, dated May 2, 1906, which deed was not recorded in the register's office until May 7, 1919.

Thus, cross-complainant did not, in any sense, deraign title from a grant by the State of Tenn., or North Carolina.

■ Since the first deed, or showing of color of title in cross-complainant, was registered May 7, 1919, it follows that the statute of limitations of seven years did not start to run until at that time.

It is shown by the record that the several other deeds relied on by cross-complainant in its attempt to show title, were also registered on the same date that the Lane to Walker and Blaylock deed was registered, to wit, May 7, 1919.

There is a deed from R. L. Walker to J. E. Agee, dated January 1, 1916, but it was not recorded, as aforesaid, until May 7, 1919. Mr. Agee testified that he built a house and moved into it on the land in the Fall of 1916 and that he vacated same and moved away from there on June 7, 1919. Thus, it is seen that Mr. Agee's possession ended about one month after the statute of limitations of seven years began to run.

The latest date claimed by the cross-complainants in their cross-bill and proof, having to do with possession,

is in 1924, which, of course, was short of the seven years required by the statute.

Therefore, it appears that the Chancellor was correct in holding that seven years adverse possession under color of title was not shown by the cross-complainant.

■ Adverting to the proposition of twenty-years continuous adverse possession so as to acquire title by prescription, we find that the first deed presented by cross-complainant was dated May 2, 1906. It seems to be conceded by able counsel for cross-complainant that they could only count possession from that date until 1924 which, of course, is not twenty years.

It is argued with considerable force by counsel for complainant, that cross-complainant did not show possession from 1906 until 1924. It is said that, under the testimony of Mr. Agee, there were several months between the date of the deed made to him and the time that he went into possession, that is from Jan. 1, 1916 until the Fall of 1916, when there was no possession of any kind of this land.

Be this as it may, we are of opinion that the record is clear that cross-complainant did not establish adverse possession for a continuous period of twenty years, and, therefore, the Chancellor's finding in this respect was correct.

The complainants advance another reason, not heretofore mentioned, why the cross-complainant cannot prevail, and that is, that it failed to locate the land claimed.

While we think there is some merit in this contention, in our view of the case, it is not necessary to go into this question.

Counsel for cross-complainant say that the character of possession necessary to support an action of trespass is the same as would be necessary in an action of forcible entry and detainer. They say that the possession shown by complainants, if any, was scrambling and inchoate and devoid of substance or continuity, and was a mere foothold which had not become a peaceable possession. They cite Jones v. Czaza, 19 Tenn. App. 327, 86 S. W. (2d) 1096, where it was said that such possession as complainant in that case had, was scrambling and inchoate and devoid of substance or continuity, and that, of the two parties struggling for possession, neither one could maintain an action of forcible entry and detainer against the other until he had acquired an actual possession which had ripened into a peaceable occupation.

■ While it is true that complainants claim a large tract of land, between 150 and 200 acres, and that the actual possession, at the time the bill was filed, was demonstrated by the erection of a wire fence and the clearing of about two acres of land, nevertheless, complainants were laying claim to the whole tract, and the Chancellor was of opinion that their possession was substantial and that it had ripened into a peaceable occupation. We think the evidence in the record supports this finding by the Chancellor and we concur in his finding of facts with reference to possession and with reference to title.

## V.

Counsel for cross-complainant further rely on secs. 9746.1 and 9746.2 Williams Ann. Code, which are taken from Chapter 28 Public Acts of 1947 which reads as follows:

"Any person holding any real estate or land of any kind or any legal or equitable interest therein, and such person and those through whom he claims having paid the state and county taxes on the same for more than twenty years continuously prior to the date when any question arises in any of the courts of this state concerning the same, and such person, and those through whom he claims, having had his deed, conveyance, grant or other assurance of title recorded in the register's office of the county in which the land lies, for said period of more than twenty years, shall be presumed prima facie to be the legal owner of said land.

"The presumption created by the foregoing section of this act shall be recognized as prima facie evidence in all the courts of this state."

In support of their position on this matter, counsel say the record shows that defendant and cross-complainant has paid taxes on the land in question for more than twenty years under recorded title papers.

The Chancellor points out in his well reasoned opinion that, while the proof does show that cross-complainants had paid taxes on at least part of the land involved herein, it also shows that the complainants and cross-defendants had also paid taxes on this land for many years, and he further held that the position of cross-complainant with the respect to the application of the foregoing statute was untenable because the record conclusively showed that the cross-complainant had no title to the land in question. Hence the presumption failed in the face of proof.

■ The presumption created by the foregoing statute is a rebuttable one. See Anderson v. Settle, 37 Tenn. 202; Swan v. Roberts, 42 Tenn. 153, 158; Stroud v. McDaniel, 80 Tenn. 617; Frank v. Wright, 140 Tenn. 535, 205 S. W. 434. In Siler v. Siler, 152 Tenn. 379, 277 S. W. 886, it was said that presumptions are mere substitutes for evidence.

We are of opinion that the Chancellor reached the correct conclusion with respect to the foregoing statute and its application in the case at bar.

■ The Chancellor concluded that the complainant was entitled to maintain the original bill which prayed for an injunction restraining the defendant from interfering with possession. Being of opinion that this was the right conclusion, it follows that the assignments of error are overruled and the decree of the Chancellor affirmed.

Affirmed.

Felts and Hickerson, JJ., concur.