IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 30, 2021 Session

## ADAM GARABRANT v. JEFFERY CHAMBERS ET AL.

Appeal from the Chancery Court for Scott County
No. 11,042         Elizabeth C. Asbury, Chancellor

_____

No. E2021-00128-COA-R3-CV
_____

In this dispute concerning the ownership of a parcel of unimproved real property, the plaintiff filed a declaratory judgment action seeking to quiet title to the property at issue. Following a bench trial, the trial court entered an order ruling in favor of the defendants. The plaintiff has appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Russell B. Morgan, Edmund S. Sauer, and Brian R. Epling, Nashville, Tennessee, for the appellant, Adam Garabrant.

Mary Jo Mann and Annie S. Duncan, Knoxville, Tennessee, and Stephen A. Marcum, Huntsville, Tennessee, for the appellees, Jeffery Chambers, Jennifer Chambers, and McCreary County Hardwoods, Inc.

**OPINION**

I. Factual and Procedural Background

The plaintiff, Adam Garabrant, filed a complaint in the Scott County Chancery Court ("trial court") on March 27, 2019, seeking a declaratory judgment concerning the ownership of a parcel of unimproved real property located in Scott County, Tennessee ("the disputed property").[1] Mr. Garabrant named Jeffery and Jennifer Chambers as defendants. In his complaint, Mr. Garabrant stated that he was the title owner of a parcel

_____

[1] The evidence demonstrated that the disputed property consisted of wooded, mountain land.

of real property, consisting of approximately twenty-one acres, which he purchased via a quitclaim deed in 2006. Mr. Garabrant also averred that he had a survey completed of the property in 2017 and that he recorded the survey in 2018.

Mr. Garabrant claimed that in 2016, he discovered that timber had been cut from his property without his permission. According to Mr. Garabrant, McCreary County Hardwoods, Inc. ("MCH") owned a parcel of adjoining property, which it had quitclaimed to Charles Stephens on October 3, 2016. Mr. Garabrant subsequently filed suit in the Scott County Circuit Court ("circuit court") against MCH and Mr. Stephens, claiming that those parties had trespassed and cut trees on Mr. Garabrant's property. According to Mr. Garabrant's instant complaint, Mr. Stephens did not answer the complaint filed in circuit court, resulting in a default judgment being entered against him on March 13, 2018.

Mr. Garabrant further alleged in his complaint that following entry of the default judgment in circuit court, Mr. Stephens executed a warranty deed conveying title to his property to the Chamberses, who subsequently obtained and recorded a survey of the property. Mr. Garabrant stated that on January 30, 2019, he received a letter from the Scott County Assessor of Property, indicating that Mr. Garabrant's survey and the survey recorded by the Chamberses created a conflict in real property ownership relevant to Mr. Garabrant's parcel. Mr. Garabrant thus sought a declaratory judgment establishing his ownership of the disputed property, based upon his deed or, alternatively, the doctrine of adverse possession predicated on payment of taxes. Mr. Garabrant attached copies of the various deeds and survey maps to his complaint.

On May 10, 2019, MCH filed a motion to intervene, alleging that litigation was pending in the circuit court wherein Mr. Garabrant sought damages from MCH for Mr. Stephens's alleged trespass on and wrongful cutting of timber from the disputed property. MCH postulated that proof of "ownership and title" to the property was a "fundamental prerequisite to Plaintiff's recovery of the $3,000,000 plus in damages claimed against [MCH] in the pending [circuit court] proceeding and the issue is hotly contested by [MCH]." MCH accordingly claimed that it should be made a party to the declaratory judgment proceedings because a declaration of real property ownership could affect its interests in the circuit court proceedings. The trial court entered an agreed order allowing intervention on May 31, 2019.

MCH and the Chamberses (collectively, "Defendants") filed answers denying that Mr. Garabrant owned the disputed property. Mr. Garabrant subsequently filed a motion for summary judgment and attached, *inter alia*, a declaration from Mr. Garabrant stating that he had purchased the property in 2006 and that his chain of title extended back to the sale of the property at a tax sale in 1981. Mr. Garabrant also stated that he had paid property taxes relative to the property since he acquired it. Mr. Garabrant concomitantly filed a statement of undisputed material facts. Defendants subsequently filed responses

to the motion for summary judgment, claiming that genuine issues of material fact existed concerning the validity of Mr. Garabrant's survey, the location of his property, and payment of taxes thereon. Although no order appears in the record, Mr. Garabrant acknowledges in his appellate brief that the trial court denied his motion for summary judgment.

Following the filing of various evidentiary motions by the parties, as well as pretrial memoranda, the trial court conducted a bench trial on September 15 and 16, 2020. The trial court heard from several witnesses, including Mr. Garabrant, three expert witnesses in land surveying, the Scott County Assessor of Property, and the Scott County Trustee. The court also received into evidence numerous exhibits. On December 14, 2020, the trial court entered an order containing extensive findings of fact and conclusions of law.

The trial court noted that Mr. Garabrant had sought to be declared owner of the disputed property either by deed title, payment of taxes, or adverse possession. With regard to whether Mr. Garabrant held title to the disputed property, the trial court found that his claimed title was derived from a line of predecessors who had originally acquired property via a Clerk and Master's deed following a tax sale. The court determined that Defendants had not challenged the validity of the Clerk and Master's deed; rather, the fundamental issue was the "location on the ground of the property purportedly conveyed by the 1981 Tax Deed."

Regarding location of the parties' tracts, the trial court appeared to credit the survey performed by the Chamberses' expert because their expert reviewed "all pertinent documents and took Defendants' title chain back to the land grant" while Mr. Garabrant's expert only reviewed the deeds following the Clerk and Master's deed from the prior tax sale. The court concluded, after considering the testimony of the witnesses and the court's credibility findings, that Mr. Garabrant's property acquired by the tax sale deed was located somewhere other than the Chamberses' property "as set forth on the Boyatt survey." The court further determined that the "property acquired by [Mr. Garabrant] is not with the boundary owned by Defendants."

With respect to Mr. Garabrant's claim of ownership by payment of taxes pursuant to Tennessee Code Annotated § 28-2-109, the trial court determined that although Mr. Garabrant and his predecessors had paid property taxes for more than twenty years, the Chamberses and their predecessors had done likewise. The trial court further determined that the presumption of ownership provided by Tennessee Code Annotated § 28-2-109 had been sufficiently rebutted by evidence that Mr. Garabrant's property was in a different location. The trial court specifically stated in relevant part:

> Under Tenn. Code Ann. §28-2-109, proof that a landholder has paid the corresponding property tax for twenty years, and has also had the deed

recorded under the landholder's name for twenty years, will give rise to a presumption that the landholder is the legal owner. However, a presumption is rebuttable. In *White v. Pulaski*[, No. M2007-01835-COA-R3-CV, 2008 WL 3850525, at *6 (Tenn. Ct. App. Aug. 18, 2008),] . . . The trial judge did not err in granting summary judgment to the defendant regarding its land ownership despite plaintiff's payment of property taxes, the court found a preponderance of evidence showing an erroneous property description, and clear and convincing evidence that the claimant's purported title was invalid. Therefore, the court held that, despite the claimant's payment of city and county taxes on the property in question for more than 20 years, the claimant could not benefit from the statutory presumption of ownership.

Based on the observations and credibility assessments of the witnesses, this Court concludes that the location of Plaintiff's property acquired by the Tax Sale Deed is somewhere other than the Defendants'/Intervening Defendant's property as set forth on the Boyatt survey.

There is no question that Plaintiff paid property taxes on the assessment for the referenced period of time. However, the location of Plaintiff's property is in dispute. Based on the facts as determined by this Court, the presumption has been rebutted.

In this case, as stated above, Plaintiff has paid taxes on the assessment for twenty (20) plus years. However, Defendants and their predecessors have also paid taxes for over twenty (20) years. From the proof in this case, the actual land that Plaintiff has paid taxes on is in a different location. Further, Plaintiff's expert did not trace Plaintiff's chain back to [the] land grant.

(Paragraph numbering omitted.)[2] Accordingly, the trial court entered a judgment on January 12, 2021, dismissing Mr. Garabrant's complaint. Mr. Garabrant timely appealed.

II. Issues Presented

Mr. Garabrant presents the following issues for our review, which we have restated slightly:

---

[2] The trial court likewise determined that Mr. Garabrant had failed to prove his claim of ownership by adverse possession. Mr. Garabrant has not raised this as an issue on appeal.

- 4 -

1. Whether the trial court erred by failing to properly apply Tennessee Code Annotated § 67-5-2504, which provides assurance of perfect title to tax sale purchasers.

2. Whether the trial court erred by allowing the Chamberses to collaterally attack the 1981 tax sale of Tax Map 11, Parcel 14, well beyond the three years permitted by Tennessee Code Annotated § 67-5-2504.

3. Whether the trial court erred by considering the testimony of the Chamberses' experts, Jim Reed and Jonathan Boyatt, who offered opinions concerning which property was sold during the 1981 tax sale based on their respective interpretations of the tax sale order and the subsequent Clerk and Master's deed.

4. Whether the trial court erred by finding that the Chamberses rebutted Mr. Garabrant's presumption of ownership pursuant to Tennessee Code Annotated § 28-2-109.

Defendants have raised the following additional issues:

5. Whether the trial court erred by allowing Mr. Garabrant to amend his complaint to allege new causes of action against Defendants on the day of trial.

6. Whether the trial court erred in failing to grant Defendants' motions for directed verdict at the conclusion of Mr. Garabrant's case and at the conclusion of all the proof.

III. Standard of Review

Our review of the trial court's judgment following a non-jury proceeding is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). "In order for the evidence to preponderate against the trial court's finding of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). "On appeal, considerable deference is given to the trial court's determinations of the credibility and weight to be given to witness testimony because 'the trial court [had] the opportunity to observe the witnesses' demeanor and hear the in-court testimony.'" *Massey v. Casals*, 315 S.W.3d 788, 793-94 (Tenn. Ct. App. 2009) (*quoting Interstate Mech. Contractors, Inc. v. McIntosh*, 229 S.W.3d 674, 678 (Tenn. 2007)). "This deferential standard specifically applies in a boundary dispute where a trial court

must choose between two competing surveys." *Pierce v. Paschall*, No. W2013-00478-COA-R3-CV, 2013 WL 6858258, at \*4 (Tenn. Ct. App. Dec. 30, 2013) (quoting *Bridgewater v. Adamczyk*, No. M2012-00697-COA-R3-CV, 2013 WL 485679, at \*9 (Tenn. Ct. App. Feb. 6, 2013)).

Furthermore, the "weight of the theories and the resolution of legitimate but competing expert opinions are matters entrusted to the trier of fact." *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 275 (Tenn. 2005). "Expert testimony is not conclusive, even if uncontradicted, but is rather purely advisory in character, and the trier of fact may place whatever weight it chooses on such testimony." *Thurmon v. Sellers*, 62 S.W.3d 145, 162 (Tenn. Ct. App. 2001). "Moreover, it is within the discretion of the trial judge to conclude that the opinion of certain experts should be accepted over that of other experts and that it contains the more probable explanation." *Hinson v. Wal-Mart Stores, Inc.*, 654 S.W.2d 675 (Tenn. 1983).

## IV. Application of Tennessee Code Annotated § 67-5-2504

Mr. Garabrant's first three issues focus on his overarching assertion that the trial court erred by permitting Defendants to challenge or collaterally attack the Clerk and Master's deed issued to Mr. Garabrant's predecessor in title following a 1981 tax sale. Mr. Garabrant points out, pursuant to Tennessee Code Annotated § 67-5-2504 (2018), that a "tax deed of conveyance" provides "an assurance of perfect title to the purchaser of such land," which "shall [not] be invalidated in any court" except in limited circumstances. As Mr. Garabrant further posits, our Supreme Court has held that "every reasonable presumption should be indulged in to uphold such a conveyance." *Sheafer v. Mitchell*, 71 S.W. 86, 94 (Tenn. 1902).

As the trial court noted in its December 14, 2020 order, however, Defendants have not sought to invalidate Mr. Garabrant's predecessor's tax deed or the tax sale. Rather, Mr. Garabrant has invoked Tennessee Code Annotated § 67-5-2504 as a means of affording him perfect title to the disputed property. However, as the trial court concluded, the inquiry is not whether Mr. Garabrant owns a parcel of real property, as conveyed by his deed and the tax deed from which it was derived, because he clearly does. Rather, the question that the trial court was tasked with answering was whether Mr. Garabrant's property is located on or near the disputed property, which the Chamberses also claim to own.

Mr. Garabrant contends that his deed and the 1983 Clerk and Master's deed following the tax sale provide that he owns the real property depicted by Tax Map 11, Parcel 14. The proof presented at trial demonstrated that the 1983 Clerk and Master's deed to Charles Neal and R.G. Cravens referenced a 1981 sale of the property for unpaid taxes wherein the G.W. King Estate was the defendant. As for the description of the property being conveyed, the 1983 Clerk and Master's deed simply references, "Map 11

Parcel 1400." Notably, the 1981 order of sale from the Scott County Chancery Court, also naming the G.W. King Estate as the defendant, describes the property as:

> Bounded on the North by land of Reed, Bounded on the South by land of Trammell, Bounded on the East by land of Trammell, Bounded on the West by land of King.

Beneath the property description, the order contains a handwritten note, stating, "Map 011, Parcel 1400."

In 1985, Mr. Neal and Mr. Cravens conveyed the property to Imperial Properties, Inc., via a limited warranty deed. In this deed, the property conveyed was described as having been bounded on the North by the Tennessee-Kentucky state line, on the south by Blue Diamond Coal Company, on the East by Blakley, and on the west by Blue Diamond Coal Company. The property conveyance further indicated that it was the same property "assessed to the G.W. King Estate for the year 1977, lying north of Capuchin Road, and described as Map 11, Parcel 14" in the Scott County "Property Assessor's Office," containing "17 acres, more or less."

In 2001, Imperial Properties, Inc., transferred title regarding the property to Mark Blakley via quitclaim deed. Inexplicably, this deed contained a different property description than that included in the previous deed:

> Bounded on the north by Thomas Angel; on the east by H.T. Baird, on the south by U.S. Trammell; and on the west by Dan Angel. BEGINNING on a Spanish oak in Thomas Angel's line; thence east with his line to a sugar tree; thence same course 8 poles to a sugar tree; same course 7 poles to a hickory; thence east 3 poles to a locust, a corner of Thomas Angel and Hiram Baird; thence south 21 poles to a poplar; SE 13 poles to a poplar, same course 9-1/2 poles to a small black oak on top of the mountain, a corner of U.S. Trammell and H.T. Baird; thence south with the top of the mountain to a hickory; same course 10 poles to a white oak; thence west 22-1/3 poles to a white oak; same course 8 poles to a black oak; thence 8 poles to a white oak; to a cliff; thence 5-1/2 poles to the top of said cliff; thence north down the mountain 34 poles to a black walnut; thence west 32 poles to a rock in a hollow; thence north 8 poles to a large rock on the west side of said hollow; thence the same course down the mountain to the beginning corner, containing by estimation 20 acres, be the same more or less.

In 2006, Mr. Blakley conveyed title to Eric and Lucy Ann Melesky via a limited warranty deed. This deed contained essentially the same description utilized in the 1985 deed to Imperial Properties, Inc. Finally, in 2006, the Meleskys conveyed the property to Mr.

Garabrant via quitclaim deed, incorporating the same description contained in their deed and the 1985 deed to Imperial Properties, Inc.

Mr. Garabrant testified that when he purchased his property in 2006, he did not have a survey performed. Mr. Garabrant articulated that he had visited the property approximately two times per year on average since then and had enjoyed camping and riding all-terrain vehicles thereon. He further related that he had placed no signs, boundary markers, fences, or structures on the property. According to Mr. Garabrant, once he discovered someone cutting trees on the disputed property, he hired James Phillips with Innovative Reclamation Technologies & Engineering Co., Inc. ("IRTEC") to conduct a survey.

Mr. Phillips testified at trial, explaining that he was asked to establish the eastern boundary of Mr. Garabrant's property. According to Mr. Phillips, he visited the property on one occasion. He also reviewed the deeds in Mr. Garabrant's chain of title back to the 1983 Clerk and Master's deed; a prior survey of an adjoining parcel commissioned by TKY Acquisitions, LLC, in 2009 and performed by IRTEC; and the tax map. Mr. Phillips explained that inasmuch as the 1983 Clerk and Master's deed described the property by referencing the tax map and parcel number, he viewed the tax map as a good source of information for locating the property.

Mr. Phillips acknowledged that he did not personally walk all of the property lines before completing his survey; rather, he concentrated on the area he was requested to determine, specifically locating the northeast corner. Mr. Phillips further testified that although he initially believed that Mr. Garabrant's property was part of the property belonging to the G.W. King Estate, he now opined that Mr. Garabrant's property derived from William King's property. However, he acknowledged that he had never found a deed to William King.

Mr. Phillips testified additionally that the property of G.W. King appeared to exist south of Capuchin Road, which would place it approximately 8,200 feet from the disputed property. He also related, however, that he believed that G.W. King or his estate had been assessed for property in a different location than that of the tract that G.W. King or his estate owned. Although Mr. Phillips explained that he had not "gone behind" the Clerk and Master's deed and did not consider the order of sale to be relevant, he acknowledged that the description of the property in the order of sale was different than that contained in the subsequent deeds. Mr. Phillips was unable to reconcile the varying deed descriptions of Mr. Garabrant's predecessors in title. Mr. Phillips also agreed that the location of Parcel 14 of Tax Map 11 had changed somewhat from the original 1970s tax map depiction to the present version.

During trial, the parties read portions of Mr. Stephens's deposition into the record. Mr. Stephens testified that he was cutting trees on the disputed property when David

- 8 -

Hatfield, a principal with MCH, instructed him to stop because someone else was claiming ownership of the land. Mr. Stephens stated that he later sold his property to the Chamberses because he could not afford to have a survey performed. Mr. Stephens stated that he knew where the property lines were located because he had grown up in the area and had hunted on the property for some time. For those same reasons, Mr. Stephens opined that Mr. Garabrant did not own the disputed property.

Surveyor Jim Reed testified on behalf of Defendants, stating that he had been asked to perform a survey for MCH before learning that surveyor Jonathan Boyatt had been retained to complete a survey for the Chamberses. Mr. Reed testified that he had reviewed all of the deeds in the chain of title for the Chamberses' property back to the original land grants. Inasmuch as the area had been the subject of a dispute between Tennessee and Kentucky concerning the proper placement of the state line sometime in the 1800s, Mr. Reed included that he had researched records in both Tennessee and Kentucky. Mr. Reed also related that he had reviewed the deeds in Mr. Garabrant's chain of title, aerial photographs of the area, other surveys, and tax maps.

Respecting tax maps, Mr. Reed elaborated:

All tax maps are wrong to some degree. Maybe a foot, maybe ten feet, maybe 8,000 feet. They're not intended to represent the actual lands. They're just a guidance for the tax assessor to send out tax cards on. So we rely on them to get a general location and to hopefully get the correct owners. But many times you find out that they're very much flawed. So they're not reliable for surveys.[3]

Mr. Reed further testified that the respective tax maps had changed in recent years, such that Parcel 14 on Tax Map 11 was not in the same location as it once was.

Mr. Reed explained that the Chamberses' property derived from a land grant to James Angel from the State of Kentucky in 1843. Mr. Reed articulated that all deeds delineated in the Chamberses' chain of title were consistent with the boundaries of that original land grant. Mr. Reed also stated that after reviewing all of the documents, he opined that the survey performed by Mr. Boyatt accurately reflected the boundaries and location of the Chamberses' property, which encompassed the disputed property. He related that had he performed a survey, it would have been the same as Mr. Boyatt's. Ergo, he saw no need for his client to incur that expense. Mr. Reed further related that Mr. Boyatt's survey was consistent with a previous survey performed by IRTEC for TKY

---

[3] The Scott County Assessor of Property, Anthony Sexton, also testified that tax maps were often inaccurate and were not designed to establish property lines. Mr. Sexton reported that there was a sign stating such posted in the Assessor's office.

Acquisitions, LLC, as well as a survey commissioned by Renfro Webb, a predecessor in title to the Chamberses, in 1974.

Mr. Reed explained that Mr. Garabrant's property did not share a common grantor with the Chamberses' property, was not derived from the land grant to James Angel, and did not exist within the boundaries of that grant. According to Mr. Reed, Mr. Garabrant's property was located some 8,000 feet away. Mr. Reed observed that in his experience as a surveyor, he had witnessed a great deal of "sloppiness" and errors in the drafting of deeds. Furthermore, Mr. Reed opined that the property sold during the 1981 tax sale was owned by Edd King, who had purchased it in 1956, but was still assessed to the G.W. King Estate because Edd King had likely never told the Assessor to place the property in his name, as was the custom in those days.

The Chamberses' surveyor, Mr. Boyatt, testified at trial and presented his survey performed of the Chamberses' property. Mr. Boyatt stated that when gathering information for his survey, he travelled to the property fifteen to twenty times, spanning a six-week period, and walked the entire boundary of the Chamberses' property as well as the property claimed by Mr. Garabrant. Mr. Boyatt reported that he had reviewed the deeds in the Chamberses' chain of title back to the original land grant as well as the previous surveys performed for TKY Acquisitions, Inc., and Mr. Webb.

Mr. Boyatt explained that although the Chamberses' deed description omitted some information, he was able to utilize earlier deeds in the chain that had complete descriptions to provide missing information. Mr. Boyatt opined that the area depicted on Tax Map 11 as Parcel 14 was actually a part of the Chamberses' property. Moreover, Mr. Boyatt did not agree with Mr. Phillips's survey because Mr. Boyatt found clear markers on the ground for the lines he established while the line claimed by Mr. Garabrant on Mr. Phillips's survey maintained no markers on the ground. Mr. Boyatt agreed with Mr. Reed's opinion that Mr. Garabrant's property was actually located some 8,000 feet away.

The trial court credited the weight of Mr. Boyatt's testimony and his survey, finding that the Chamberses owned title to the disputed property. Based upon our thorough review, we conclude that the evidence does not preponderate against that finding. The trial court's ruling neither invalidates the 1983 Clerk and Master's deed nor any subsequent deed in Mr. Garabrant's chain of title; rather, the court's ruling simply decrees that Mr. Garabrant's property is not in the same location as the disputed property. In other words, Mr. Garabrant still owns title to his real property, but the location of his tract is not where he believed it to exist.

Mr. Garabrant argues that the boundaries of his claimed property coincide with Parcel 14 on Tax Map 11, which is the description contained in the 1983 Clerk and Master's deed and his deed. However, Mr. Reed, Mr. Boyatt, and Mr. Sexton testified

- 10 -

that tax maps were not determinative of a property's true location or boundaries. In addition, the courts of this State have held this to be true on numerous occasions. *See Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 381 (Tenn. 2007) ("A tax map is permissible in a boundary dispute to confirm the payment of taxes but is not particularly helpful for the purpose of establishing a boundary line."); *Conder v. Salyers*, 421 S.W.3d 589, 593 n.2 (Tenn. Ct. App. 2013) (stating that "tax maps are not drawn to show actual boundary lines"); *Whitworth v. Hutchison*, 731 S.W.2d 915, 917 (Tenn. Ct. App. 1986); *Lafever v. Lafever*, No. M2008-00651-COA-R3-CV, 2009 WL 167329 at *9 (Tenn. Ct. App. Jan. 23, 2009); *Weaver v. Estate of Haley*, No. 03A01-9511-CH-00404, 1996 WL 97653, at *1 (Tenn. Ct. App. Mar. 6, 1996). We therefore determine Mr. Garabrant's reliance on the tax map to be misplaced.

Mr. Garabrant also relies upon the description included in the 1983 Clerk and Master's deed. However, Mr. Garabrant and all three surveyor experts testified that the description of "Map 11 Parcel 1400" incorporated in the Clerk and Master's deed was not completely consistent with the description contained in the order of sale following the 1981 tax sale. In addition to containing a handwritten notation of the map and parcel number, the order of sale describes the real property as:

> Bounded on the North by land of Reed, Bounded on the South by land of Trammell, Bounded on the East by land of Trammell, Bounded on the West by land of King.

This description comports with neither the location of Parcel 14 on Tax Map 11, then or now, nor with Mr. Phillips's opinion concerning the location of Mr. Garabrant's property.

As this Court has previously explained, "a Clerk and Master's deed executed pursuant to a decree of the Chancellor cannot add to or vary the terms of the decree." *State v. Sexton*, 368 S.W.2d 69, 74 (Tenn. Ct. App. 1962). Therefore, to the extent that the 1983 Clerk and Master's deed varied from the terms of the 1981 order of sale, the order of sale must control. *See id.* (holding that language in the deed that varied from the decree would not be given effect). We therefore find Mr. Garabrant's arguments with respect to the tax map and description unavailing.

As this Court has previously elucidated: "The construction of deeds and other instruments and documents and their legal effect as to boundaries is a question of law. What boundaries the grant or deed refers to is a question of law; where those boundaries are on the face of the earth is a question of fact." *Hong v. Foust*, No. E2011-00138-COA-R3-CV, 2012 WL 388448, at *5 (Tenn. Ct. App. Feb. 8, 2012) (quoting 12 Am. Jur. 2d *Boundaries* § 121 (1997)). As such, we "review the trial court's finding as to the true location of the [party's] boundary line as a finding of fact that is entitled to the presumption of correctness." *Id.* Based upon our thorough review of the evidence presented at trial, we determine that the preponderance of the evidence supports the trial

court's findings concerning the location of the boundaries of the Chamberses' property as including the disputed property.

The trial court determined the process of Mr. Boyatt's survey to be more credible, noting that it was corroborated by the testimony of Mr. Reed. Both of these expert witnesses researched the Chamberses' chain of title back to the land grant from the State of Kentucky. Mr. Boyatt accomplished multiple visits to the property, walking the lines of the Chamberses' tracts, as well as the tract claimed by Mr. Garabrant, and searching for monuments and other line indicia noted in the deeds. Mr. Boyatt testified that he found such indicia consistent with the lines he drew but not along the lines claimed by Mr. Garabrant. Moreover, Mr. Boyatt's survey was consistent with the deeds in the Chamberses' chain of title and with previous surveys performed in the area.

In contrast, Mr. Phillips testified that he saw no need to look beyond the 1983 Clerk and Master's deed in analyzing Mr. Garabrant's chain of title. Moreover, Mr. Phillips did not walk the perimeter of the property lines when completing his survey, focusing his attention solely on one boundary and placing emphasis on the tax map location. As such, we conclude that the trial court properly credited Mr. Boyatt's testimony and survey in determining that the Chamberses owned the disputed property.

### V. Application of Tennessee Code Annotated § 28-2-109

Mr. Garabrant alternatively relies upon Tennessee Code Annotated § 28-2-109 (2017) as providing him ownership of the disputed property. This statute states:

> Any person holding any real estate or land of any kind, or any legal or equitable interest therein, who has paid, or who and those through whom such person claims have paid, the state and county taxes on the same for more than twenty (20) years continuously prior to the date when any question arises in any of the courts of this state concerning the same, and who has had or who and those through whom such person claims have had, such person's deed, conveyance, grant or other assurance of title recorded in the register's office of the county in which the land lies, for such period of more than twenty (20) years, shall be presumed prima facie to be the legal owner of such land.

According to Mr. Garabrant, because he and his predecessors in title have paid taxes on Parcel 14 from Tax Map 11 for more than twenty years and have had deeds to the same parcel recorded in the register's office for more than twenty years, he must be presumed to be the owner of the disputed property.

The trial court determined that although Mr. Garabrant and his predecessors had paid taxes on Parcel 14 from Tax Map 11 for more than twenty years, the location of his

- 12 -

property was in dispute. The court further found that Defendants and their predecessors had also paid taxes on their parcels, which they believed to contain the disputed property, for more than twenty years. The trial court specifically determined that the "actual land that Plaintiff has paid taxes on is in a different location." The evidence supports these findings.

The trial court accordingly concluded that the presumption of ownership provided in Tennessee Code Annotated § 28-2-109 had been rebutted. Based on our thorough review of the evidence, we agree. As this Court previously explained in *White v. Pulaski Elec. Sys.*, No. M2007-01835-COA-R3-CV, 2008 WL 3850525, at *6 (Tenn. Ct. App. Aug. 18, 2008), in pertinent part:

> The presumption created in [Tennessee Code Annotated § 28-2-109] is a rebuttable one. *Welch v. A.B.C. Coal Co.*, 41 Tenn. App. 208, 293 S.W.2d 44 (Tenn. Ct. App. 1956); *see also Meals v. Lucas*, No. 02A01-9404-CH-00085, 1995 WL 318467 at *3 (Tenn. Ct. App. May 26, 1995). The evidence shows that the [plaintiffs] and their predecessors paid city and county taxes on the disputed property for over twenty (20) years; however, inasmuch as neither they nor their predecessors had legal title or equitable interest in the disputed 19 foot tract of land, they were not entitled to the presumption of legal ownership granted by the statute. Moreover, the tax map cannot be used to establish the boundary lines of the property. *See State of Tennessee v. Whetsell*, 2006 Tenn. App. Lexis 334, 2006 WL 1408403 (May 22, 2006).
>
> Even if the [plaintiffs] did meet the statutory requirements to receive the benefit of the presumption that they are the legal owners of the disputed tract, [defendant] rebutted the presumption by showing by clear and convincing proof that any purported title to the disputed tract claimed by the [plaintiffs] was not valid. The statutory presumption is that the claimant is the *prima facie* legal owner of the land; as such, it is controlling only in the absence of contrary facts and circumstances. *See Deavers v. Deavers*, 61 Tenn. App. 704, 457 S.W.2d 618 (Tenn. Ct. App. 1970).

The *White* Court accordingly affirmed the trial court's ruling in favor of the defendant. *See id.*

Similarly, here, although evidence exists that for more than twenty years, each party or the party's predecessors had paid property taxes on their respective tracts, each of the parties believed that their tract encompassed the disputed property. Moreover, Defendants have demonstrated that Mr. Garabrant's property exists in a different location and that the Chamberses are the title owners of the disputed property. As such, the

presumption of *prima facie* ownership contained in Tennessee Code Annotated § 28-2-109 was rebutted by the Chamberses' proof.  This issue is therefore without merit.

## VI.  Remaining Issues

Defendants have raised issues in their brief concerning the propriety of the trial court's rulings with regard to Defendants' motions for directed verdict and Mr. Garabrant's motion to amend.  However, having determined that Mr. Garabrant's issues are unavailing and that the trial court's ruling should be affirmed, these additional issues are pretermitted as moot.

## VII.  Conclusion

For the foregoing reasons, we affirm the trial court's judgment dismissing Mr. Garabrant's claims against Defendants.  We remand this matter to the trial court for enforcement of the judgment and collection of costs incurred below.  Costs on appeal are assessed to the appellant, Adam Garabrant.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE